Mr. Justice CLIFFORD
delivered the opinion of the court.
Principal question presented for decision in this ease is, whether a collector of the customs is entitled to retain as compensation a sum not exceeding two thousand dollars per annum from his receipts as storage for the custody and safekeeping of imported merchandise, entered for warehousing, under the acts of Congress upon that subject, and stored in bonded warehouses. First-named defendant was the collector of customs for the district of Portland and Falmouth, and the other defendants, were his sureties. He was appointed collector prior to the twentieth day of January, 1858, and between that day and the eighteenth day of April, 1861, he received as storage for the custody and safe-keeping of imported merchandise, subject to duty and stored in bonded warehouses, the sum of six thousand two hundred and eighty-one dollars, as appears by the pleadings. Due returns were made by the collector, but he refused to pay .over the moneys so received, and the plaintiff's sued him and his sureties, declaring on his official bond.
Defendants craved oyer of the bond, and pleaded performance. Replication of the plaintiff's alleged that the statement of the collector’s accounts, as adjusted and settled at the Treasury Depártment, showed that he had received that amount of the moneys of the plaintiffs, and that he had neglected and refused to pay the same into the treasury. Rejoinder of the defendants alleged that the sum specified in the replication of the plaintiff's accrued and was received, accounted for quarter-yearly, and retained by the collector in virtue of his office for storage of merchandise in bonded *650 warehouses, from the twentieth day of January, 1858, to the sixteenth, day of April, 1861, inclusive, but not more than two thousand dollars in any one year, as he lawfully might do. Plaintiffs demurred, and the defendants joined in demurrer. Parties were heard, and the Circuit Court over ruled the demurrer and rendered judgment for the defendants, and the plaintiffs sued out this writ of error.
1. 1. All controversy as to the material facts of the case, so far as they are set forth and well pleaded in the rejoinder of the defendants, is closed. Applying that well-known rule to the case, it follows that the demurrer admits that the whole amount retained by the collector, as alleged in the replication, accrued and was received by that officer in virtue of his office as storage of imported merchandise in bonded warehouses, and that he never received from that source during the period embraced in this controversy more than two thousand dollars in any one year. .Views of the defendants are that the collector had a right, under the fifth section of the act of the third of March, 1841, as construed by this court, to retain to his-own use all sums received from storage, not exceeding two thousand dollars in any one year, as compensation for his services.* By the fifth section of that act collectors are directed to render a quarter-yearly account, in addition to the account previously required by law, and to include in it all sums collected for fines, penalties, and forfeitures, or from seizures of merchandise, or on account of suits for frauds against the revenue, or for rent and storage in the public storehouses, for which a rent is paid beyond the rents paid by the collector.
2. Construction of that section, as given by this court, was that collectors must include all sums received for rent and storage in the public stores beyond the rents which they paid, in their quarterly accounts, and if it appeared from such accounting that the aggregate sums so received in any one year exceeded two thousand dollars, they must pay the. excess into the treasury, as part and parcel-of the public *651 money. Such excess, under that law as construed, beljngs to the treasury, but if the sums received from that source in any one year did not exceed two thousand dollars, the court held that collectors might retain the whole amount to their own use, as additional compensation for their services.*
3. Sources of their compensation prior to that time were cei’tain fees or emoluments, commissions and allowances, to. which was added a prescribed sum, called salary, which was much less than the compensation to which such officers were at all times entitled. They were also entitled to certain proportions of hues, penalties, and forfeitures, but were never before obliged to embrace such receipts in their quarterly accounts. •
Statement of the court in that ease was, and it was undoubtedly correct, that the bill, as originally reported, not only required that the sums so received should be included in the quarterly accouuts of collectors; but if the aggregate from all those sources, including fines, penalties, and forfeitures, exceeded two thousand dollars in any one year, collectors were required to pay the excess into the treasury.
Radical amendments, however, were-made in the bill during its passage, essentially changing its character in that respect. Fines, penalties, and forfeitures, as it passed into a law, are not required to be included in the aggregate of the accounts from which-to deduct the two thousand dollars, in order to ascertain the excess to be paid -into the treasury; and, inasmuch as fees and emoluments were previously required to be included in the -quarterly accounts of collectors as the principal source of their compensation, under such previous laws,, the court held, and well held-, that there was nothing left for that part of the section which directed the payment of the excess into the treasury to operate upon, except the sums received from rent and storage. Conclusion of the court, therefore, was, and it was a unanimous conclusion, that collectors might, if the. office earned so much, retain to-their own use, as an addition to the compensation *652 allowed to them by previous laws, the sum of two thousand dollars per annum for rent and storage, but that all excess beyond that sum must be paid into the treasury as public money.
II. 1. None, of these principles are controverted by the plaintiffs, nor do they contend that the fifth section of that act has been repealed. Storehouses used for the storing of imported merchandise were such, at that date, as were owned by the United States, and such as were leased by the collectors under the direction of the Treasury Department. Imported merchandise might, in certain cases, be stored for a limited time without the payment of duties, unless sooner withdrawn for consumption. Where the entry of merchandise was incomplete, the fifty-second section of the act of the 28th of February, 1799, required that the importation should be conveyed to some warehouse or storehouse to be designated by the collector, there to remain, with due and reasonable care, at the expense and risk of the owner or consignee, under the care of some proper officer, until the invoice'was exhibited and the value was ascertained by appraisement.
2. Goods damaged during the voyage were also required to be deposited in some warehouse or storehouse to be des7 ignated by the collector, in the same manner and subject to the same conditions as where the entry of the goods was incomplete, to be kept until the extent of the damage could be ascertained in the same way.*
3. Persons importing teas also might pay or secure the duties before a permit was granted for landing the same, on the same terms as prescribed in respect to other imported merchandise, or they might, at their option, give bond, without security, to the collector of the district for the payment of the duties in two years from the date of such bond; but the teas so imported, in that event, are ±equired -to be deposited, at the expense and risk of the importer, in one or more storehouses to be agreed upon between the importer and the revenue officer of the port.†
*653 4. Wines and distilled spirits might also, under the act of the 20th of April, 1818, be warehoused “ in such public, or other storehouses ” as might be agreed upon between the importer and surveyor, or other public officer of the revenue where the wines or other distilled spirits were landed.*
Whether deposited in the public or “ other storehouses,” under either of those acts the goods imported were to bo kept under the'joint locks of the importer and inspector of the revenue, and no delivery of the same could be made unless the duties were first paid or secured, nor without a permit, in writing, under the hand of the collector and naval officer of the port.†
-Custody and control were the same, whether merchandise was deposited in the public or other storehouse; and. whether in the one or the other, the expenses of safe-keeping wove to be paid by the importer, owner, or consignee. Importer and the proper revenue officer might agree upon a store as the place of deposit other than those few warehouses then owned by the United States; but when the locks of the inspector and of the importer were affixed to the doors of the same, as required by law, and the merchandise as imported was deposited therein, under the control of the collector, it became a public storehouse for the purpose of securing the importation until the duties should be paid or secured, and the same should be withdrawn by authority of law.
5. Provision was also made in the sixth section of the act of the 14th of July, 1832, that imported wool and the manufactures of wool might, .at the option of the importer, be placed in the public stores, under bond, at the risk of the importer, subject to the payment of the customary storage and charges, and to the payment of interest at the rate of six per cent, per annum while so stored.‡
Effect of that law was to diminish the compensation of ■collectors, as it made large additions to the free list and to increase the demand for storehouses for public use, as it authorized the warehousing of a large class of importations never before entitled to those privileges.
*654 Resort was had hy Congress to additional compensation acts, passed annually for the period of eight years, to remedy the first difficulty,-and the- second was overcome without législation, by storing the merchandise, as imported, at the expense and risk of the importer, in ¡storehouses designated hy the collector, or in such, as were agreed upon between the importer and the revenue officer, or in stores owned hy private persons, and leased for that purpose by the collector for limited periods. Commerce and trade revived, and the practice of leasing such storehouses at certain ports became general, and “the customary storage” collected from the importers at such offices greatly exceeded the amount paid as rent to the owner of the stores; and, as there was no law of Congress requiring collectors to account for.the excess, it was retained to their own use, and at some ports swelled their receipts beyond the standard of a reasonable compensation.
III. 1. Such was the state of affairs in this behalf when Congress passed the act of the 3d of March, 1841, to which reference has already been made. Express provision of that act was, that no collector shall, on any pretence whatsoever, hereafter receive, hold, or retain for himself, in the aggregate, more than six thousand dollars per year, including all commissions for duties and all fees for storage, or fees or emoluments, or any other commissions or salaries which are allowed and limited by law. Collectors were required by the second section of the act of the 2d of March, 1799, called the Compensation Act, to keep accurate accounts of all fees and official emoluments by them received, and to transmit the same to the Comptroller of the Treasury; but they were allowed to retain to their own use the whole amount of emoluments derived from those sources.*
2. Maximum rate of compensation was first prescribed by the act of the 30th of April, 1802, and the^ provision was, that whenever the annual emoluments of any collector, after deducting the expenditures incident to the office, shall *655 amount to more than five thousand dollars, he shall account for the surplus, and pay the same into the treasury.*
Districts for the collection of the customs were, by the act of the 7th of May, 1822, divided into two classes, usually denominated the enumerated and the non-enumerated ports, and the maximum rate of compensation, to collectors was diminished. Emoluments of collectors for the seven enumerated ports might reach, under the provisions of that act, the sum of four thousand dollars, but could not exceed that amount under any circumstances.
Annual compensation allowed to the collectors of the nonénumerated ports, of which Portland was one, might amount to three thousand dollars; and the provision in respect to both classes was, that the excess, after deducting the expenses incident to the office, should be paid into the treasury as public money.†
3. The contest in Walker’s case was, whether or not he was entitled, as the' collector of a non-enumerated port, to an annual compensation of six thousand dollars. He claimed that he was, because, as he insisted, the maximum rate of compensation to the collectors of those ports, as prescribed by the act of the 7th of May, 1822, was repealed, and, consequently, that he was entitled to four thousand dollars under the ninth section of that act, and two thousand dollars from the i-eceipts of his office for storage, as allowed by the fifth section of the act under consideration. But this court held, that the maximum rate prescribed in the prior law allowed to the collectors of the non-enumerated ports was not repealed, but was in full force as to all the emoluments of collectors prescribed or recognized in that act.
Unanimous conclusion of the court, therefore, was that collectors of the non-euumerated ports might receive, as the annual compensation for their services, the sum of three thousand dollars, from the sources of emoluments prescribed and recognized in that act; and, in addition thereto, might retain whatever sums came to their hands within the year from *656 rent and storage, provided the storage did not exceed two thousand dollars. Plaintiffs concede that such was the decision of this court in that case, and they do not deny that it was correct; but they contend that it does not control the present case, because, as they insist, the storage received in that case was storage in stores leased to the government, for which rents were paid beyond the rent paid by the collector.
4. Amount retained by the collector in this case accrued and was received for storage of imported merchandise in bonded warehouses; and the plaintiffs contend that bonded warehouses are not public storehouses within the meaning of that act. They are mistaken, however, in supposing that .the amount retained by the collector in that ease was wholly received for storage of goods stored in the public storehouses, for which rents were received beyond the rent paid by the collector. On the contrary, the bond of the collector in that suit was dated the seventh day of September, 1850, more than four years after the act of the sixth of August, 1846, establishing the warehouse- system, was passed.
Date of the writ in that case was the twenty-first day of November, 1856, more than seven years after the treasury regulations of the seventeenth of February, 1849, making provision for bonded warehouses, were adopted and promulgated.
IV. 1. Importations of every kind might be entered for warehousing under the first section of the act establishing the warehouse system, and when so entered the requirement was that the goods “ shall be taken possession of by the collector,” and be deposited in “ the public stores or other stores,” to be agreed on by the collector and the importer, owner, or consignee. Public stores, as well as the “ other stores,” are required to be under the joint locks of the importer and the proper revenue officer, as provided in the act respecting the deposit of wines and distilled spirits, and the “ other stores,” as well as the public stores, so called, are expressly recognized in the same section as public storehouses, because it is there provided that if the goods so de *657 posited shall remain “ in public store beyond one year, without payment of the duties and charges thereon, then the goods ” shall be appraised and sold by the collector at public auction.*
Such goods are not only required to go into the possession of the collector, and be thus deposited under his control, but they are also required to be kept by him in the place of deposit, at the charge and risk of the importer, owner, or consignee. Every provision of the section assumes that the goods, whether deposited in the public stores or the other stores therein mentioned, are in the possession and under the control of the collector, and they cannot be withdrawn for consumption without paying the duties, nor for transportation dr exportation without paying the appropriate expenses.
2. Authority to make rules and regulations was conferred upon the Secretary of the Treasury by the fifth section of that act. Pursuant to that authority, he promulgated the regulations of the seventeenth of February, 1849, and from that time it was the policy of the department to discontinue leased stores as far as possible, and substitute bonded warehouses in their place. Bonded warehouses, under those regulations, were divided into three classes:
First. Public stores and stores leased by the department prior to the date of the regulations.
Second. Stores in the possession and sole occupancy of the importer, and placed under a customs lock and that of the importer, to be used only for the purpose of storing his own importations. Such importers furnished their own stores, and, of course, paid no rent, but they were required, as importers, to pay a sum equivalent to the salary of an inspector, or half-storage, to the collector.
Third. Stores in the occupation of persons desirous of engaging in the business of storing dutiable merchandise. Importers storing goods in such stores paid rent to the owner, but they also were required to pay a sum equivalent to the *658 salary of an inspector, or half-storage to the collector, as in the other class of stores.
Both of those classes are called private bonded warehouses, because they were the property of their owners, and were not formally leased to the United States; but no store could be constituted such a. warehouse unless it was a first-class fire-proof store, according to the classification of insurance offices, awl was first proved to be such to the satisfaction of the Secretary of the Treasury, and was by him authorized to be used for the storage of dutiable merchandise. Until so selected by the' Secretary of the Treasury, and the bond given by the owner as required, no store of a private owner could be used for the storing of dutiable importations; and when so selected and bonded, and placed under, the customs locks, the store was under the control of the collector, and was as much a public storehouse as one owned or formally leased by the United States.*
3. Same regulations provide that all moneys received by collectors from owners ór occupants of private bonded stores in payment for half-storage, or for the attendance of an inspector at the premises, will be accounted for as receipts for storage in their accounts with the department. Evidence is not wanting to show that the department has constantly recognized the subsisting operation of the provision under consideration in relation to storage. Throughout the period since its passage the department has required collectors to include the sums received from storage in their quarterly accounts, and if the provision is in force for that purpose, it is difficult to see why it is not also in force as authorizing the allowance to collectors.
Express recognition of its subsisting operation is also found in one of the adjudications of the department, in which it was decided that where “goods are stored under bond in a private store the importer shall either make'monthly payment of a sum equivalent to the pay of an inspector placed in charge of the same, or one-half the amount which would *659 accrue as storage ou the goods so stored if placed in public store.”*
Implied recognition of the rule, as here laid down, is found in the daily transactions of the department with the collectors of the seven enumerated ports. They are not only required to return all sums received as storage, but they are allowed six thousand dollars per annum as compensation for their services, which is exactly two thousand dollars beyond what they are entitled to receive, unless the latter sura can properly be allowed from the amount which annually accrues, and is collected and returned by them as storage.
4. Direct decision of this court in the case of Walker yras that they, were not entitled to but four thousand dollars under previous laws, and there has been no legislation upon the subject since that time, except that the fortieth section of the act of the eighteenth of July, 1866, provided that all moneys received by collectors for the custody of goods, wares, and merchandise in bonded warehouses, shall be accounted for as storage, under the provisions of the act which is the foundation of the collector’s claim in this case.
Sums received for storage not exceeding two thousand dollars in any one year, if duly included in their quarterly accounts, are as much due to the collectors of the non-enumerated ports as to the incumbents of the larger offices, and their l’ight to the same rests ou the same foundation. Purpose of the act establishing the warehouse system, and of the regulations which followed that enactment, was to discontinue leased stores, and to substitute bonded warehouses in their place, and the leases of such stores were accordingly required to be cancelled, by the subsequent act extending the system, at the shortest period of their termination, and the making of new leases was fexpressly forbidden at ports where there were private bonded warehouses.†
5. Necessity has always existed, since the Treasury Department was established, for more storehouses for the deposit and safe-keeping of imported merchandise than the *660 government owned, and it cannot be doubted that all such as have been placed under the control of the collectors, and put under the customs locks, and used for that purpose in conformity to law and the regulations of the Treasury Department, were, during the period they were so controlled, used, and occupied, public storehouses within the meaning of the provision requiring collectors to include receipts for storage in their quarterly accounts, and allowing them to retain out of the same a sum not exceeding two thousand dollars in any one year.
Judgment affirmed.

 5 Stat. at Large, 432.

 United States v. Walker, 22 Howard, 299.

 1 Sta at Large, § 52, p. 665.

 Id. § 62, p. 673.

 3 Stat. at Large, 469.

 1 Id. 674; 3 Id. 469.

 4 Id. 691.

 1 Stat. at Large. 708.

 2 Stat. at Large, 172.

 3 Id. 693.

 9 Stat. at Large, 53.

 Clark v. Peaslee, Massachusetts District, October Term, 1862. Treas. Cir. and Den. by Ogden, p. 118.

 10 Stat. at Large, 272.

Cir. No. 4, 1857.