Prakash C. Kapil, Petitioner *v.* Association of Pennsylvania State College and University Faculties et al., Respondents.

Argued December 18, 1981, before Judges ROGERS, BLATT and WILLIAMS, JR., sitting as a panel of three.

*Mark P. Widoff,* with him *Mary Catherine Frye, Widoff, Reager, Selkowitz and Adler, P.C.,* for petitioner.

*Robert J. Schwartz,* Assistant Counsel, for respondent, Commonwealth of Pennsylvania.

*James L. Cowden,* with him *Jerome H. Gerber, Handler and Gerber, P.C.,* for respondents, Association of Pennsylvania State College and University Faculties, Richard Hazley and Robert Ross.

OPINION BY JUDGE WILLIAMS, JR., August 10, 1982:
Directed to our original jurisdiction under Section 761(a)(1) of the Judicial Code,[1] Prakash C. Kapil (plaintiff) has filed a complaint in equity seeking money damages and specific performance of a collective bargaining agreement. Named as defendants are

[1] 42 Pa. C. S. §761(a)(1).

the Association of Pennsylvania State College and University Faculties (APSCUF); two people presently or formerly affiliated with APSCUF; the President of Bloomsburg State College; the Board of Trustees of Bloomsburg State College; and the state Department of Education.

Two sets of preliminary objections have been filed: one set on behalf of APSCUF and the two people connected therewith;[2] and a set on behalf of the president and trustees of Bloomsburg State College and the Department of Education. The disposition of those objections is the matter now before us.

The plaintiff, Kapil, is a tenured faculty member at Bloomsburg State College (College), having been originally hired in 1967. APSCUF is the certified, exclusive collective bargaining agent for the employee unit of which Kapil is a member, the professional employees of the state college system; although Kapil is not a member of APSCUF itself. At all times material to the instant lawsuit, APSCUF and the College were parties to an in-force collective bargaining agreement affecting the employment rights of Kapil's employee unit.[3] That agreement contained, *inter alia,* provisions addressing the matter of sabbatical leaves for faculty members, establishing a grievance and arbitration procedure, and prohibiting discrimination by the parties to the agreement, or by

_____

[2] The two APSCUF-connected defendants are a Richard Hazley and a Robert Ross. The complaint avers that at all times material to the action Hazley was APSCUF's president, and that Ross was the secretary of APSCUF's branch at Bloomsburg State College.

[3] The agreement was actually entered into by the Commonwealth of Pennsylvania and APSCUF, with the Commonwealth agreeing for itself and on behalf of the Department of Education, the state colleges, and the boards of trustees of the respective state colleges.

a faculty member, against another faculty member. The seeds of the instant suit were sown when the College, in June 1979, failed to grant the plaintiff's application for a sabbatical leave, and APSCUF declined to grieve his complaint in that respect or take the matter to arbitration.

The plaintiff's action is stated in two counts. Count One avers that the College's denial of sabbatical leave was arbitrary and discriminatory, and that APSCUF's refusal to represent him in the matter was also an act of discrimination. More specifically, in the latter regard, the plaintiff avers that APSCUF discriminated against him because of his racial or ethnic background, and because he was not a member of the union. The plaintiff further avers that APSCUF's conduct was also in retaliation for a charge of unfair labor practices he had previously filed against that organization. It is also asserted in Count One that the president and trustees of the College, and the state Department of Education, "encouraged, permitted and condoned" APSCUF's discriminatory refusal to process the plaintiff's grievance; going even further, the plaintiff alleges that the state Department of Education conspired with the union in that respect.

Based on the above averments, Count One of the plaintiff's complaint asserts that all of the defendants violated his equal protection and due process rights under the fourteenth amendment of the United States Constitution. Relying on Sections 1983 and 1985 of the federal Civil Rights Act,[4] the plaintiff, in Count One, claims against *all* of the defendants for consequential damages in excess of $20,000 and puni-

---

[4] 42 U.S.C. §§1983, 1985. The plaintiff's action under Section 1985 is based on 42 U.S.C. §1985(3). Sections 1983 and 1985(3) were derived from the federal Civil Rights Act of 1871.

tive damages in excess of $10,000; as well as for costs and attorney fees.[5]

Count Two of the plaintiff's complaint avers that all of the defendants committed a breach of contractual duties. It is averred that the president and trustees of the College, and the state Department of Education, breached the collective bargaining agreement by arbitrarily and discriminatorily denying the plaintiff's application for sabbatical leave. Count Two also avers that APSCUF and two of its named agents breached the collective bargaining agreement and violated a fiduciary obligation by not processing the plaintiff's grievance. Count Two asserts, further, that there was cross-participation by all of the defendants in each of the alleged contractual violations.

Based on the averments in Count Two of his complaint, the plaintiff claims against *all* of the defendants for consequential damages in excess of $20,000; and prays for a decree of specific performance as to the collective bargaining agreement, including an order that the requested sabbatical be granted.

The defendants' preliminary objections raise numerous challenges to the formal and substantive sufficiency of the plaintiff's complaint in equity. The defendants also question the power of this Court to entertain the action pursuant to its original jurisdiction. We need not consider all of the objections; because we conclude there are fatal jurisdictional obstacles to the plaintiff's suit as brought.

As noted, Count One of the plaintiff's complaint purports to state a cause of action under Sections

---

[5] The plaintiff's claim for consequential damages has two elements: He asserts (1) that because he was denied the sabbatical leave he was unable to complete work for a doctorate degree, and was thereby prevented from attaining a higher employment classification: and (2) that he suffered mental and emotional distress as a result.

1983 and 1985 of the federal Civil Rights Act; and seeks an award of money damages against all of the defendants, including the board of trustees of the College and the state Department of Education. In *Quern v. Jordan,* 440 U.S. 332 (1979), the United States Supreme Court expressed the view that Congress, in enacting Section 1983, did not intend to "override the *traditional sovereign immunity* of the [s]tates." 440 U.S. at 341. (Emphasis added.)[6] It would seem that one of the most "traditional" dimensions of state sovereign immunity is that which states historically have enjoyed *in their own courts* from most suits for money damages. In any event, that dimension of state sovereign immunity clearly pre-existed Section 1983 of the federal Civil Rights Act.

Given the *Quern* construction of Section 1983, it follows that a state's sovereign immunity, from a Section 1983 damage action, is not solely that immunity which the 11th amendment of the federal Constitution provides as to such suits in federal courts. Rather, a state's "traditional" sovereign immunity, to the extent that the state has preserved it, would also bar a Section 1983 damage action in the state's own courts. Recognizing that very bar is our decision in

---

[6] In a subsequent case, *Owen v. Indepcndence,* 445 U.S. 622 (1980), the United States Supreme Court stated that:

Where the immunity claimed by the defendant was well established *at common law* at the time §1983 was encated, and where its rationale was compatible with the purposes of the Civil Rights Act, *we have construed the statute to incorporate that immunity.* (Emphasis added.)

445 U.S. at 638. Given the language of *Quern* and *Owen,* the issue of state sovereign immunity from Section 1983 damage suits is a matter of Congress's intent relative to that statute. Since *Quern,* in effect, construed Section 1983 as incorporating the "traditional sovereign immunity" of the states, there would seem to be no need to frame the immunity issue in terms of a state *not* being a "*person*" within the meaning of the statute.

*Schroeck v. Pennsylvania State Police,* 26 Pa. Commonwealth Ct. 41, 362 A.2d 486 (1976). As an additional matter, the same immunity that bars a Section 1983 damage action against a state also bars a Section 1985 action. *Schroeck; An-Ti Chai v. Michigan Technological University,* 493 F. Supp. 1137, 1162 (W.D. Mich. 1980); *Thompson v. State of New York,* 487 F. Supp. 212, 228 (N.D. N.Y. 1979).[7] Thus, a state's own courts may not entertain such an action against a state or its agencies, unless the state has in that respect waived its sovereign immunity.

It is clear that defendant Board of Trustees of Bloomsburg State College is a state agency or instrumentality,[8] as is the defendant Department of Education. Accordingly, these two defendants are immune from monetary liability on the action stated in Count One of the plaintiff's complaint; that is, unless the Commonwealth of Pennsylvania has waived its sovereign immunity as to such a claim. The Commonwealth has effected no such waiver.[9] Thus, the plaintiff's Count One action against the board of trustees of the College and the state Department of Education is not even judicially cognizable, much less a basis for resort to this Court's original jurisdiction.

Still with reference to Count One of the plaintiff's complaint, there can be no resort to our original jurisdiction even as to the other state-related defendant,

---

[7] In *Monell v. New York City Department of Social Services,* 436 U.S. 658 (1978), the United States Supreme Court held that Congress, in enacting Section 1983, *did intend* that municipal corporations and other local government units should be subject to damage suits under the statute. *Monell* did not reach the issue of a *state's* immunity.

[8] *See* Section 202 of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §62. In the action at bar, the plaintiff does not purport to sue the trustees as individuals.

[9] *See* 1 Pa. C. S. §2310, and 42 Pa. C. S. §§8521, 8522.

the President of Bloomsburg State College. Even assuming, *arguendo,* that the College president is not armed with the full shield of immunity, he, as a party-defendant, does not come within the scope of our original jurisdiction under Section 761(a)(1) of the Judicial Code. This Court's original jurisdiction under that statutory provision depends upon the party-defendant being either the Commonwealth government or an "officer thereof, acting in his official capacity." The President of Bloomsburg State College is not an "officer" of the Commonwealth. An "officer" of the Commonwealth, for purposes of our original jurisdiction, is an employee of the Commonwealth whose duties principally involve the *statewide* formulation or administration of policy. *Kulik v. Stotelmyer,* 481 Pa. 57, 391 A.2d 1313 (1978); *Opie v. Glascow, Inc.,* 30 Pa. Commonwealth Ct. 555, 375 A.2d 396 (1977). The College president is responsible for the administration of a single college in a statewide system of such institutions; he does not formulate policy or have responsibility for the entire system. Accordingly, as important as the president's task is, he is not an "officer" of the Commonwealth in a jurisdictional sense. *Kulik; Wallace v. Department of Public Welfare,* 32 Pa. Commonwealth Ct. 615, 380 A.2d 930 (1977).[10]

To summarize with respect to Count One of the plaintiff's complaint, we must conclude that this Court has no original jurisdiction over the action against the College board of trustees, the state Department of Education, and the College president. As to Count One, the only remaining defendants are APSCUF and the two named agents of that organization. The lat-

---

[10] The plaintiff does not make clear whether he is suing the College president in an individual or official capacity. However, this Court is without original jurisdiction in either event.

ter set of defendants are private parties; and, certainly, we have no independent basis for original jurisdiction as to them.

Count Two of the plaintiff's complaint, as we have observed, is a contract action. To the extent that Count Two seeks money damages and other contractual relief based on an alleged breach of agreement by either the Board of Trustees of Bloomsburg State College or the state Department of Education, the action is one within the exclusive original jurisdiction of the Board of Claims. Such is mandated by the "Board of Arbitration of Claims Act."[11] To the extent that the Count Two action relates to the other defendants, APSCUF, the two agents of that union, and the President of Bloomsburg State College, our lack of original jurisdiction has already been explained.

For the reasons set forth in this opinion, we conclude that the plaintiff's complaint in equity states no action that is within the compass of our original jurisdiction.

ORDER

AND Now, the 10th day of August, 1982, it is hereby ordered as follows:

1. The preliminary objections of defendants Board of Trustees of Bloomsburg State College and the Commonwealth of Pennsylvania, Department of Education, are sustained; and as to those defendants the plaintiff's action is dismissed.

2. As to the remaining defendants, the Association of Pennsylvania State College and University Faculties, Richard Hazley, Robert Ross, and James H. McCormick, President of Bloomsburg State College, this matter is transferred to the Court of Com-

---

[11] Act of May 20, 1937, P.L. 728, *as amended*, 72 P.S. §§4651-1 *et seq.*

mon Pleas of Columbia County pursuant to 42 Pa. C. S. §5103, for disposition of preliminary objections heretofore filed and undisposed of, and for further proceedings thereafter, if necessary.

The Chief Clerk shall certify to the Prothonotary of the Court of Common Pleas photocopies of the docket entries of the above captioned matter and transfer to him the record thereof.

Judges MENCER and PALLADINO did not participate in the decision in this case.