470 A.2d 482

**Prakash C. KAPIL, Appellant,**

v.

**ASSOCIATION OF PENNSYLVANIA STATE COLLEGE AND UNIVERSITY FACULTIES, et al., Appellees.**

Supreme Court of Pennsylvania.

Submitted Oct. 25, 1983.

Decided Dec. 30, 1983.

94

William R. Tait, Jr., Williamsport, for appellant.

Robert J. Schwartz, Jerome H. Gerber, Harrisburg, for appellees.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHER-TY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION

NIX, Justice.

Appellant, Prakash C. Kapil, was hired by Bloomsburg State College (Bloomsburg) in 1967 and became a tenured faculty member in 1972. He became eligible for a sabbatical leave in 1974 and each year since 1974 has applied for sabbatical to complete work on his doctorial degree so that he would be eligible for a promotion. Mr. Kapil has consistently been denied sabbatical leave since 1974 and alleges the reason for this denial is discriminatory based on his national origin.

In July, 1979 appellant filed a grievance with his collective bargaining representative, the Association of Pennsylvania State College and University Faculties (APSCUF). APSCUF is the certified, exclusive collective bargaining agent for the employee unit of which Kapil is a member, the professional employees of the state college system, although Kapil is not a member of APSCUF itself. The grievance was filed pursuant to the collective bargaining agreement in effect between APSCUF and Bloomsburg State College. APSCUF refused to process this complaint and refused to take the matter to arbitration.[1]

Appellant filed a complaint in equity consisting of two counts in the Commonwealth Court, 68 Pa.Cmwlth. 287, 448 A.2d 717. Appellees filed preliminary objections [2] which were sustained and as to the governmental defendants, the Department of Education (Department) and the trustees of Bloomsburg, the complaint was dismissed. As to the re-

---

1. Appellant processed his grievance through steps one, two and three of the collective bargaining agreement without success. He was not permitted to initiate binding arbitration under section D of Article V of the collective bargaining agreement.

2. The objections raised were a question of jurisdiction; failure to exhaust statutory remedies; a demurrer; the exclusive remedy is before the Pennsylvania Labor Relations Board; failure to exhaust administrative remedies; lack of standing to seek review of a collective bargaining agreement; failure to provide statutorily required notification in a timely fashion; and, failure to join an indispensable party.

maining defendants, the matter was transferred to the Court of Common Pleas of Columbia County.

In Count I appellant avers that Bloomsburg's denial of sabbatical leave was arbitrary and discriminatory. He contends that APSCUF and its agents breached its duty of fair representation and that the trustees of Bloomsburg State College and its president as well as the Pennsylvania Department of Education participated in this breach of duty. He asserts the "trustees of Bloomsburg State College, McCormick and Department participated in APSCUF's breach of its duty of fair representation in that they encouraged, permitted and condoned APSCUF's discriminatory refusal to process plaintiff's grievance to binding arbitration". He further alleges that APSCUF and the Department conspired to violate his constitutional rights by agreeing to deprive him of his right to fair representation. He claims that these acts violated his equal protection and due process rights under the Fourteenth Amendment to the U.S. Constitution and were remedial under the provisions of 42 U.S.C.A. sections 1983 [3] and 1985 [4].

Appellant is asking for compensatory damages in excess of $20,000; punitive damages in excess of $10,000; plaintiff costs and reasonable attorney's fees as against all parties.

3.  § 1983.  Civil action for deprivation of rights
    Every person who, under color of any statute, ordinance regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

4.  § 1985.  Conspiracy to interfere with civil rights
    Depriving persons of rights or privileges
    (3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or

In Count II he averred the refusal to grant him a sabbatical was a breach of Article III [5] of the collective bargaining agreement by the College, its President and the Department of Education. He further averred the refusal of APSCUF and its agents to process his grievance was also a breach of Article III of the collective bargaining agreement. He prayed for specific performance of the collective bargaining agreement including granting of his request for sabbatical leave and consequential damages in excess of $20,000.

## I.

We will first address the propriety of the Commonwealth court's order as it relates to Count I of the complaint. The

Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen in the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

5.  *Fair Practices*
   A. Neither party hereto nor any FACULTY MEMBER, shall discriminate against any other FACULTY MEMBER or candidate for employment on the basis of race, creed, color, sex, family status, age, national origin, APSCUF membership or activity or lack thereof, or political belief and/or affiliation.
   B. There shall be no discrimination by either of the parties hereto or any FACULTY MEMBER against members of the same family regarding concurrent employment at any COLLEGE.
   C. If any provision of this Agreement is in conflict with Federal Executive Orders, 11246 and 11375, as amended, and the Civil Rights Act of 1964, and all laws and rules relating to the Commonwealth's Affirmative Action Program, the provisions of such orders, laws and rules shall prevail.
   D. The parties shall meet and discuss, during the term of this Agreement on such aspects of this Article that are of mutual interest.

Commonwealth Court dismissed the complaint against the Department and Bloomsburg on the basis of sovereign immunity. In *Mayle v. Pennsylvania Department of Highways*, 479 Pa. 384, 388 A.2d 709 (1978) the doctrine of sovereign immunity was abrogated. However, the General Assembly enacted Act 152 which reinstated the doctrine of sovereign immunity in September 1978 setting forth eight specific instances in which suits against the Commonwealth could be maintained.[6] The cause of action set forth under Count I would not fall within any of those eight categories. Thus, it would have been barred if the immunity of Act 152 applied.

This Court subsequently ruled Act 152 may not constitutionally govern actions which became actionable prior to the effective date of the Act.[7] *Brungard v. Mansfield State College*, 491 Pa. 114, 419 A.2d 1171 (1980); *Gibson v. Commonwealth*, 490 Pa. 156, 415 A.2d 80 (1980). Therefore, we must determine when appellants' alleged 1983 and 1985 claims accrued.

Appellees contend that appellants' cause of action arose on June 27, 1979 after the effective date of Act 152. He

6. The eight categories listed in Act 152 are:
    (1) Vehicle liability
    (2) Medical professional liability
    (3) Care, custody or control of personal property
    (4) Commonwealth real estate, highways and sidewalks
    (5) Potholes and other dangerous conditions
    (6) Care, custody and control of animals
    (7) Liquor store sales
    (8) National Guard activities
    Act of September 28, 1978, P.L. 788, No. 152, § 2, 42 Pa.C.S.A. § 5110 reenacted at 42 Pa.C.S.A. § 8522.

7. The legislature expressly provided for the retroactive application of Act 152. This Court denied the retroactive application of Act 152 as an unconstitutional extinguishment of a cause of action which has accrued to a claimant. *Gibson v. Commonwealth*, 490 Pa. 156, 415 A.2d 80 (1980). This writer expressed his dissent in *Bershefsky v. Commonwealth, Department of Public Welfare*, 491 Pa. 102, 105, 418 A.2d 1331, 1332 (1980).

therefore asserts that Act 152 operated as a bar to a suit on this claim.[8]

■ The true test in determining when a cause of action arises or accrues is to establish the time when the plaintiff could have first maintained the action to a successful conclusion. 51 Am.Jur.2d, Limitation of Actions § 107 (1970).

■ Under the collective bargaining agreement appellant contends he became eligible for sabbatical leave in 1974. He has applied for a sabbatical each year since then which has been denied.[9] Therefore his cause of action accrued prior to the passage of the Act and sovereign immunity is not a bar. Therefore, the Commonwealth Court's dismissal of the count as to the state agencies was improper.[10]

## II.

The subject matter of Count II of appellant's complaint involves a labor dispute. Appellant avers that his employers and APSCUF breached his rights under the collective bargaining agreement. Such a dispute falls clearly within the public policy of the Public Employee Relations Act (PERA), Act of July 23, 1970, P.L. 563, No. 195, 43 Pa.C.S.A. § 1101.101, et seq.

The public policy of PERA has been expressed in pertinent part as follows:

The General Assembly of the Commonwealth of Pennsylvania declares that it is the public policy of this Commonwealth and the purpose of this act to promote orderly and constructive relationships between all public employers and their employes subject, however, to the paramount right of the citizens of this Commonwealth to keep

8. We do not have before us at this stage any assertion of a bar by virtue of the statute of limitations.

9. Appellee claims that June 27, 1979 was the denial date for appellant's claim, but the record indicates that this claim has been repeatedly denied each year since 1974.

10. In view of this conclusion, we need not consider the Commonwealth Court's conclusion that the President of Bloomsburg State College was not an officer of the Commonwealth.

inviolate the guarantees for their health, safety and welfare. Unresolved disputes between the public employer and its employes are injurious to the public and the General Assembly is therefore aware that adequate means must be established for minimizing them and providing for their resolution. Within the limitations imposed upon the governmental processes by these rights of the public at large and recognizing that harmonious relationships are required between the public employer and its employes, the General Assembly has determined that the overall policy may best be accomplished by ... (2) requiring public employers to negotiate and bargain with employe organizations representing public employes and to enter into written agreements evidencing the result of such bargaining; and (3) establishing procedures to provide for the protection of the rights of the public employe, the public employer and the public at large.

From the foregoing it is apparent the legislature has recognized that the relationship between the public employer and employee is a unique one and deserving of special treatment. *See Pennsylvania Labor Relations Board v. Altoona Area School District,* 480 Pa. 148, 389 A.2d 553 (1978); *Hollinger v. Department of Public Welfare,* 469 Pa. 358, 365 A.2d 1245 (1976); *Pennsylvania Labor Relations Board v. State College Area School District,* 461 Pa. 494, 337 A.2d 262 (1975). The primary objective is to establish a harmonious and fair working relationship for the benefit of the citizens and also for the protection of the employee. See, *Pennsylvania Labor Relations Board v. Altoona Area School District, supra; Pennsylvania Labor Relations Board v. State College Area School District, supra.* The scheme adopted for this purpose includes the creation of an administrative board with the expertise to resolve disputes of this nature. Since that board is charged with the resolution of all these disputes, it was expected to develop a uniform system of treatment throughout this Commonwealth in matters of this nature. These desirable ends would be completely frustrated were

we to adopt the Commonwealth Court's view that these matters fell within the jurisdiction of the Board of Arbitration of Claims. 72 Pa.C.S.A. § 4651–4.[11]

■ Clearly the legislative use of the phrase contract action against the Commonwealth for monetary damages was never intended to set the Board of Claims up as having jurisdiction over disputes relating to collective bargaining agreements in the public sector. Such an interpretation would immediately create a conflict since the jurisdiction of the Court of Claims is expressly made exclusive. 72 Pa.C.S.A. § 4651–4.

■ It is clear here that Count II is in essence a complaint which traditionally has been recognized as falling within the panoply of labor disputes. Count II merely charges the employer with enumerated breaches of the collective bargaining agreement then in existence. The fact that one of the alleged breaches relates to Article III paragraph A which prohibits discrimination based upon national origin does not transform the entire count and justify its removal from under the terms of PERA.

In Count I the same racial discrimination was alleged and on the basis of that racial discrimination allegation, we recognized in our discussion of Count I appellant's right to sue at law.[12] The further reference to the violation of Article III section A in Count II is repetitious and would seek the same damages which are claimed in Count I. Count II extends far beyond the racial complaint and as stated is in fact general charges of violations of the collective bargaining agreement.

For the foregoing reasons we are satisfied that Count II must be read as a whole, and so read its true intendiment is

11. § 4651–4. Powers of board
The Board of Claims shall have exclusive jurisdiction to hear and determine all claims against the Commonwealth arising from contracts hereafter entered into with the Commonwealth, where the amount in controversy amounts to $300.00 or more. . . .

12. The reinstatement of Count I which addresses the racial complaint assures appellant his day in court as to that issue.

to put in issue asserted violations of the labor contract which appropriately should be disposed of under the provisions of PERA.

Accordingly, the order of the Commonwealth Court is reversed. The Commonwealth of Pennsylvania, Department of Education and the Board of Trustees of Bloomsburg State College are reinstated as defendants under Count I of the complaint and Count I of the complaint is remanded to the Commonwealth Court for further proceedings consistent herewith. Count II of the complaint is dismissed.

HUTCHINSON, J., files a concurring opinion in FLAHERTY, J., joins.

HUTCHINSON, Justice, concurring.

I agree with the majority that appellant's 42 U.S.C. § 1983 claim (Count I) is not barred by sovereign immunity. Moreover, I also concur with the majority's holding that Count II of the complaint must be dismissed because it is not within the exclusive original jurisdiction of either the Board of Claims or the Commonwealth Court.

I write separately, however, to reiterate our holding in *Ziccardi v. Commonwealth, Department of General Services*, 500 Pa. 326, 456 A.2d 979 (1982), that a union's failure to process a grievance to arbitration is not an unfair labor practice within our Labor Board's jurisdiction. In *Ziccardi* we held that, under certain circumstances, an employee's remedy for the conduct complained of in Count II is an action against his union for damages resulting from the union's bad faith failure to proceed to arbitration, not a proceeding before the Pennsylvania Labor Relations Board. As stated in *Ziccardi,* the employee's burden in such an action is heavy, his pleading and proof must be specific and "[T]he union ... must be given broad discretion in determining whether to pursue the remedy." 500 Pa. at 330, 456 A.2d at 981. Moreover, appellant is not entitled to bring an equity or assumpsit action against her employer for breach of the collective bargaining agreement unless he shows by

specific facts that the employer participated in the union's bad faith or conspired with it to deny the employee the job protection afforded by the collective bargaining agreement. 500 Pa. at 332, 456 A.2d at 982. In this case, appellant's assertions that his union and employer breached the collective bargaining agreement are too general to set forth a cause of action.

FLAHERTY, J., joins in this opinion.