612 A.2d 1371

UNITED NATIONAL INSURANCE COMPANY, Appellant,

v.

J.H. FRANCE REFRACTORIES CO., the Van Brunt
Company, Mineral Industries, Inc. and Green
Point Fire Brick Company, Appellees.

Superior Court of Pennsylvania.

Argued Jan. 28, 1992.

Filed July 27, 1992.

Elizabeth W. Fox, Philadelphia, for appellant.

Mark D. Turetsky, Norristown, for appellees.

Before CIRILLO, DEL SOLE and KELLY, JJ.

KELLY, Judge:

In this opinion we are called upon to determine whether the trial court, sitting in equity, may properly enter a compulsory non-suit based on a statute of limitations defense; and if so, whether the trial court applied the proper limitations period. We find, first, that a trial court may apply a statute of limitations to determine the timeliness of an equitable action for rescission of a fraudulently obtained insurance policy. We also find that the trial court correctly applied a two-year limitations period, rather than a six-year limitations period. Therefore, we affirm.

The relevant facts and procedural history are as follows. J.H. France Refractories Company, The Van Brunt Company, Mineral Industries, Inc., and Green Point Fire Brick Co. (hereinafter, collectively referred to as "the insured") manufacture refractory products, particularly fire brick and related items. In May of 1982, the insured's officer, the person responsible for obtaining insurance coverage, contacted its agent and directed him to seek $5,000,000 worth of additional[1] liability insurance coverage from a new carrier (rather than increasing coverage under an existing policy). At the time, the insured's agent knew that:

(i) [the insured] had been sued by one Temple in 1979, who had alleged injury due to [the insured's] asbestos-containing product; that Temple had mesothelioma; and

___

1. At the time, the insured possessed $5,000,000 of primary liability coverage under a policy issued by Allstate Insurance Company and $5,000,000 of "umbrella" coverage under a policy issued by Twin City Fire Insurance Company.

that Allstate Insurance Company had refused to defend the action on the ground that asbestos-related conditions were not covered by its policy;

(ii) as a result of the lawsuit filed by Temple, ... France had produced [between 1968 and 1972,] a cement which contained 26 percent of asbestos fiber [, and] that [the insured's] asbestos was alleged to be a hazardous substance which caused severe and even lethal injury to persons exposed to it;

(iii) [the insured] had brought a declaratory judgment action in 1980 or 1981 against Allstate Insurance Company because of its refusal to defend the Temple case;

(iv) at least twelve actions had been brought against [the insured] alleging injury due to exposure to [its] asbestos-containing product. One of these actions involved six plaintiffs and another named 24 plaintiffs. Each action demanded compensatory damages in excess of $10,000 and many sought damages in excess of $1,000,-000.

(Tr.Ct.Op. of 1/4/90 at 2). The insured's agent contacted, through another agent (the intermediary agent), a third agent (the insurer's agent) who issued policies of United National Insurance Company (the insurer).

In order to issue the policy, the insurer's agent requested and obtained, from the insured's agent (who obtained his information from the insured's officer), information regarding asbestos. In response to the insurer's agent's questions, and on the application for insurance, the insured's agent answered (at the insured's officer's direction) that there were no

incidents indicating exposures, such as noxious fumes or waste discharges, defective or recalled products, etc., which occurred prior to the date of this application which could cause injuries to persons or property during the period of coverage requested hereunder.

(Tr.Ct.Op. of 1/4/90 at 3). The insured revealed, however, that there were two $10,000 lawsuits involving its products. Based on this information, the insurer's agent issued an

excess[2] insurance policy on behalf of the insurer. (Tr.Ct. Op. of 1/4/90 at 3). The policy at issue covered the period from June 3, 1982 through June 3, 1983.

Approximately one month after the policy became effective, the insurer's agent asked the intermediary agent for additional information on the lawsuits mentioned on the insurance application. The insured's agent advised the insurer's agent that the first lawsuit involved

[a] claim ... against Bethlehem Steel by an employee for Workers Comp and Liability Coverage for some sort of lung condition. The employee ended up suing Bethlehem Steel and all the suppliers of any product to the steel. The insured in this case didn't feel he was doing business with Bethlehem Steel.

(Tr.Ct.Op. of 1/4/90 at 4). The insured's agent responded, with regard to the second lawsuit, that

[t]he second loss was very similar to the first loss. Again, [the insured] was enjoined [sic] with 20 other defendants. No verdict or evidence that they are involved has been proven to date.

(Tr.Ct.Op. of 1/4/90 at 4).

The policy remained in effect until June 3, 1983. The insured sought to renew the policy, and the insurer's agent requested additional information on a "short form." From information contained on the short form, and supplied by the insured's agent, the insurer's agent learned, on June 3, 1983, that: the insured had three (not two, as earlier reported) products liability cases involving $10,000; and the insured had produced, from 1968 to 1972, a cement containing 26 percent asbestos fiber, but it discontinued manufacturing this product in 1973. (Tr.Ct.Op. of 1/4/90 at 4). Based on this information, the insurer forwarded to the insured a $15,000,000.00 umbrella policy, covering the period from June 3, 1983 through June 3, 1984, which contained

**2.** The insured could obtain the coverage provided under the excess policy only after exhausting its primary and umbrella policies obtained from other insurers.

an asbestos and occupational disease exclusion. The insured refused to accept this policy.

On September 12, 1983, the insurer received notice of a claim against the insured based on exposure to the insured's asbestos-based product. On October 28, 1983, the insurer's president wrote to the insured's president that the insurer considered the policy covering the period from June 3, 1982 through June 3, 1983 "void ab initio," due to the insured's "material misrepresentations" in obtaining the policy. (Tr.Ct.Op. of 1/4/90 at 5).

On October 30, 1987, the insurer filed suit against the insured requesting a rescission of its policy as of June 3, 1982, the policy's starting date. The insurer alleged that the insured had fraudulently misrepresented that there were no asbestos-related claims against it. In response, the insured defended that the insurer's action was untimely, based on a two-year statute of limitations and on the doctrines of laches, estoppel, and waiver. The case proceeded to trial without a jury.

Following the conclusion of the insurer's case, the insured, arguing that the insurer's action was untimely (based on the expiration of a two-year limitations period, the doctrine of laches, estoppel, and waiver) and that the insurer failed to produce evidence of fraud, moved for a non-suit. Relying on certain Findings of Fact and Conclusion of Law, the trial judge granted the insured's motion for compulsory non-suit. The trial judge reluctantly found that, although the insurer had proved all of the elements needed to rescind the insurance policy based on the insured's false and fraudulent misrepresentations, the insurer had failed to bring its action within the two-year limitations period governing common law fraud cases.[3]

The trial judge denied post-trial motions filed by both parties. The insurer filed this timely appeal.

---

3. As a result of its decision, as noted by the trial judge, the policy remains in effect, and the insurer must provide coverage thereunder, despite the insured's fraud in obtaining the coverage.

On appeal, the insurer raises the following issues for our review:

1. WHETHER THE DOCTRINE OF LACHES SHOULD APPLY TO AN EQUITABLE ACTION FOR RESCISSION OF A FRAUDULENTLY OBTAINED INSURANCE POLICY. (NOT ADDRESSED BY THE TRIAL COURT, WHICH INSTEAD APPLIED AN ERRONEOUS STATUTE OF LIMITATIONS.)

2. ASSUMING A STATUTE OF LIMITATIONS APPLIES TO AN ACTION IN EQUITY FOR RESCISSION OF A FRAUDULENTLY OBTAINED INSURANCE POLICY, AND ASSUMING THE CAUSE OF ACTION ACCRUED AFTER FEBRUARY 18, 1983, WHETHER THE APPLICABLE STATUTE OF LIMITATIONS IS THE SIX-YEAR CATCHALL STATUTE OF LIMITATIONS FOUND IN 42 Pa.C.S.A. § 5527? (ANSWER IN THE NEGATIVE BY THE TRIAL COURT, WHICH APPLIED A TWO-YEAR STATUTE OF LIMITATIONS FOR TRESPASS ACTIONS INVOLVING FRAUD UNDER 42 Pa.C.S.A. § 5524.)

3. SHOULD A CAUSE OF ACTION FOR RESCISSION OF A FRAUDULENTLY OBTAINED INSURANCE POLICY ACCRUE AT THE TIME WHEN THE PLAINTIFF COULD HAVE FIRST MAINTAINED THE CAUSE OF ACTION TO A SUCCESSFUL CONCLUSION? (ANSWERED IN THE NEGATIVE BY THE TRIAL COURT.)

(Appellant–Insurer's Brief at 3).

Initially, we note that our standard of review in this challenge to the propriety of the trial court's entry of compulsory non-suit is well established. We must "give the plaintiff the benefit of every fact and reasonable inference arising from the evidence, resolving all conflicts in the evidence in his or her favor." *Harvilla v. Delcamp,* 521 Pa. 21, 25, 555 A.2d 763, 764 (1989); *Coatesville Contractors v. Borough of Ridley,* 509 Pa. 553, 559, 506 A.2d 862, 865 (1986). We can uphold the entry of a compulsory non-suit only "in a clear case where the facts and circumstances

lead to one conclusion—the absence of liability." *Harvilla, supra,* at *id.,* 521 Pa. at 25, 555 A.2d at 764. *See also Coatesville, supra,* at *id.,* 509 Pa. 559, 506 A.2d at 865.

■ The insurer first contends that the trial judge erred in applying a statute of limitations to determine the timeliness of its equitable action for rescission of a fraudulently obtained insurance policy. The insurer asserts that the doctrine of laches, not a statute of limitations, governs the timeliness of actions in equity; the insured's failure to prove the prejudice element of the laches defense warrants a finding that its action for rescission is timely. We do not agree.

■ It is well-settled that "a party claiming the benefit of the doctrine of laches must demonstrate prejudice due to lapse of time" [between the time the plaintiff's cause of action arose and its efforts to enforce it]. *Kay v. Kay,* 460 Pa. 680, 685, 334 A.2d 585, 587 (1975) (citations omitted). Thus, a laches defense has two elements: 1) a delay arising from the other party's lack of due diligence, and 2) resulting prejudice. *In re Francis Edward McGillick Foundation,* 406 Pa.Super. 249, 264, 594 A.2d 322, 330 (1991) (appeal granted, 529 Pa. 649, 602 A.2d 860 (1992)) (citations omitted).

Equity courts in this Commonwealth have long employed the doctrine of laches to determine the timeliness of actions brought before them. *See, e.g., First National Bank v. Lytle Coal,* 332 Pa. 394, 3 A.2d 350 (1939). *See generally* Standard PA Practice § 79:39–79:50 (application of laches doctrine to actions in equity). Our courts have also applied statutes of limitation to actions in equity. *See id.* at § 79:43. The question presented in this appeal is whether a court sitting in equity may decide whether an action is timely based solely on a statute of limitation.[4]

4. We note that, as correctly stated by the insurer, the trial court's decision in this regard involved a conclusion of law, not binding upon an appellate court. *See Amodeo v. Ryan Homes, Inc.,* 407 Pa.Super. 448, 454, 595 A.2d 1232, 1235 (1991).

The laches doctrine has traditionally played a dominant role in timeliness determinations by our equity courts. For example, our Supreme Court has held that, with respect to actions within exclusive equity jurisdiction, an equity court was not compelled to apply a statute of limitations to determine whether a plaintiff brought his claim in a timely manner. *Lurtherland v. Dahlen,* 357 Pa. 143, 53 A.2d 143 (1947). However, equity courts would look to a statute of limitations when determining whether, within a laches discussion, the plaintiff's delay was reasonable. For example, in *Elias v. Elias,* 428 Pa. 159, 237 A.2d 215 (1968), our Supreme Court stated that "[l]acking fraud or concealment, the general rule is that laches follows the statute of limitations." *Id.,* 428 Pa. at 162, 237 A.2d at 217. In 1975, our highest court noted that a statute of limitations *may not* control the outcome of an equity court's determination of the timeliness of an action before it, but may *only provide guidance* in determining, within a laches discussion, whether the plaintiff's delay was reasonable. *See Kay, supra,* 460 Pa. at 685, 334 A.2d at 587 (emphasis added). This court, relying on *Kay,* has stated that statutes of limitation do not control in equity. *See, e.g., Francis McGillick Foundation, supra,* 406 Pa.Superior Ct. at 594 A.2d at 330 (equity court examining trustee wrongdoing not limit timeliness inquiry to limitations period). We have further held that a statute of limitations does not provide an affirmative defense in equity actions. *Fuisz v. Fuisz,* 386 Pa.Super. 591, 596, 563 A.2d 540, 542 (1989), *reversed on other grounds,* 527 Pa. 348, 591 A.2d 1047 (1991).[5]

**5.** The *Fuisz* court did not rely on *Kay* when it stated that laches, not the statute of limitations, is the proper affirmative defense for attacking the timeliness of an equity action. In support of that statement, the *Fuisz* court cited *Ritter v. Theodore Pendergrass,* 356 Pa.Super. 422, 514 A.2d 930 (1986). 386 Pa.Super. at 596, 563 A.2d at 542. However, a close examination of the *Ritter* decision reveals that the court's objection to the application of a statute of limitations defense was purely procedural.

The *Ritter* court noted that, in an equity action, a statute of limitations defense may not be raised through a preliminary objection, but the defense of laches may be. 356 Pa.Super. at 427, 514 A.2d at 933. *See also* Pa.R.C.P. 1017(b)(4), 1509(b). (In fact, a statute of limita-

tions defense may not be raised at the preliminary objection stage, whether the action is at *law or in equity.* *See* Pa.R.C.P. 1017(b)(4) (pleadings allowed at preliminary objections include demurrer, but not statute of limitations); Pa.R.C.P. 1030 (statute of limitations must be plead as affirmative defense in "New Matter"); Pa.R.C.P. 1509(a) (party may plead preliminary objections in equity action as permitted by Rule 1017(b))).

The *Ritter* court went on to say that "[a]lthough not strictly and technically applicable to action in equity, a court of equity will, by analogy, adopt and apply statutes of limitation." 356 Pa.Super. at 428, 514 A.2d at 934 (citations omitted). That court noted that courts of equity adopt statutes of limitation to avoid a situation where an action, though barred at law, would lie in equity. *Id.* (citations omitted). The *Ritter* court, contrary to the *Fuisz* court's assertion that a statute of limitations has no place in an equity action, discussed the timeliness of the complaint in terms of a six-year statute of limitation, and by analogy, to the bar of laches, to determine the propriety of the lower court's granting the appellees' preliminary objections which raised the laches defense. *Id.* 356 Pa.Super. at 430–31, 514 A.2d at 935.

The *Ritter* court was required to discuss the timeliness of the complaint in terms of the laches doctrine because the claim that the complaint was time-barred was raised in preliminary objections. 356 Pa.Super. at 427, 514 A.2d at 933. The *Ritter* court specifically declined to consider the appellees' argument that the appellants' claim was barred by the statute of limitations after it concluded that the statute of limitations defense was not properly raised. *Id.,* 356 Pa.Superior Ct. at 427 n. 4, 514 A.2d at 933 n. 4. As discussed *infra,* a statute of limitations defense could not have been asserted as a preliminary objection. Thus, the discussion of the laches doctrine was procedurally, not substantively, required. Here, the timeliness argument was raised in a motion for non-suit, where a statute of limitations defense may be properly raised. Therefore, *Fuisz, Ritter,* and its progeny, are distinguishable from the instant case.

The insurer also cited *Beech v. Ragnar Benson, Inc.,* 402 Pa.Super. 449, 587 A.2d 335, *appeal granted,* 527 Pa. 627, 592 A.2d 1295 (1991), in support of its claim that a statute of limitations may not be applied in an equity action. The insurer's reliance on this decision is misplaced.

In *Beech,* this Court noted that laches, a "purely equitable principle[,] . . . may not be invoked as a defense in a court of law," *id.,* 402 Pa.Superior Ct. at 453, 587 A.2d at 337, and that statutes of limitations govern the timeliness of actions at law. *Id.,* at 454, 587 A.2d at 338. However, that case is factually distinguishable from the instant case. The appellant in *Beech* argued that because he requested both an equitable remedy (specific performance) and a legal remedy (money damages) in his breach of contract action, the trial court erred in dismissing his complaint based on laches. The appellant in *Beech* claimed that laches could not be applied to dismiss his claim for money damages. *Id.,* 402 Pa.Superior Ct. at 453–54, 587 A.2d at 337–38. While conceding that laches may not be applied in actions at law, we rejected the appellant's argument that his legal claim was viable, after concluding that the action was essentially a request for equitable

In 1976, our legislature enacted a Judicial Code within a new Title 42 of the Pennsylvania Consolidated statutes. *See* Act of July 9, 1976 (P.L. 586, No. 142), the "Judiciary Act of 1976." Our lawmakers collected all civil and criminal statutes of limitation in chapter 55 of the Code. 42 Pa.C.S.A. § 5501, *et seq.* The provision governing the applicability of statutes of limitation stated that, as a general rule:

[a]n action, proceeding or appeal must be commenced within the time specified in or pursuant to this chapter unless in the case of an action or proceeding a different time is provided by this title or another statute or, in the case of a civil action or proceeding, a shorter time which is not manifestly unreasonable is prescribed by written agreement.

42 Pa.C.S.A. § 5501(a).

■ In 1978, our legislature amended § 5501 and added subsection (c), and, thereby, specifically provided that statutes of limitation do apply to equitable matters. 42 Pa. C.S.A. § 5501(c) states that:

[t]his chapter *is applicable to equitable matters*, but nothing in this chapter shall modify the principles of waiver, laches, and estoppel and similar principles heretofore applicable in equitable matters.

42 Pa.C.S.A. § 5501, 1976, June 9, P.L. 586, No. 142 § 2, effective June 27, 1978. As amended 1978, April 28, P.L. 202, No. 53, § 10 (61.1), effective June 27, 1978 (emphasis added). Pursuant to § 5501, as amended, a trial court may determine the timeliness of an action in equity by reference to an applicable statute of limitations.[6]

---

relief, and was therefore subject to dismissal based on the equitable doctrine of laches. *Id.,* 402 Pa.Superior Ct. at 453–56, 587 A.2d at 337–39.

**6.** We note here that the language in § 5501(c) regarding the principles of laches, estoppel, and waiver, does not alter our conclusion. Given its plain meaning, 1 Pa.C.S.A. § 1903, this language may be construed to mean that these doctrines continue to apply in equitable matters. In other words, contrary to the *Kay* court's statement, a statute of limitation *may* control in equity, or, an equity court may apply the laches doctrine to determine the timeliness of an action before it. In

In amending the statute governing the applicability of the statutes of limitation, our legislature withdrew the foundation upon which the cases cited by the insurer, which relied on *Kay, supra,* rested. The trial court did not commit an error of law in applying a statute of limitation to determine the timeliness of the insurer's action. Therefore, we conclude that the insurer's first claim fails.

▇ The insurer contends, through its second and third issues, that the trial judge applied the wrong limitations period. The insurer asserts that the trial judge should have looked to the six-year statute in 42 Pa.C.S.A. § 5527, not the two-year statute in 42 Pa.C.S.A. § 5524. The insurer argues, first, that its suit in equity for a rescission of the contract with its insured, is not one "sounding in trespass including fraud ...," and therefore, 42 Pa.C.S.A. § 5524(7) does not apply. It also argues that its action accrued in 1982; the six-year catch-all statute in 42 Pa.C.S.A. § 5527, applicable to actions accruing prior to February 18, 1983, governs.[7]

fact, in the years following the amendment of § 5501, our courts have continued to employ the doctrine of laches. *See, e.g., Francis McGillick Foundation, supra.*

7. Our review of relevant case law reveals some conflict regarding whether a two-year statute of limitation or a six-year statute applies to actions for fraud accruing prior to 1983. In *Gabriel, supra,* this Court noted that "the court in *A.J. Cunningham Packing v. Congress Financial Corp.,* 792 F.2d 330 (3d Cir.1986) held that the six-year 'catchall' state of limitations was applicable" to fraud claims that accrued after 1978 but before 1983. *Gabriel, supra,* at 396 n. 21, 534 A.2d at 495 n. 21. However, this Court, in *Bickell v. Stein,* 291 Pa.Super. 145, 435 A.2d 610 (1981), upheld the trial court's dismissal of a fraudulent misrepresentation action based on a finding that it was time-barred according to a two-year limitations period applicable to actions in tort. *Id.,* 291 Pa.Superior Ct. at 150–51, 435 A.2d at 612. This Court has also applied a two-year limitations period to other actions based on contract. *See e.g. Bender v. McIlhatten,* 360 Pa.Super. 168, 520 A.2d 37 (1987) (two-year statute of limitations, 42 Pa.C.S.A. § 5524(3), not six-year residuary provision, applies to 1981 claim for tortious interference with lease negotiations). In addition, a federal court applying Pennsylvania law ruled that, prior to the 1982 enactment of § 5524(7), the limitation period for an action based on fraud was two-years as mandated in 42 Pa.C.S.A. § 5524(3). *See Fickinger v. C.I. Planning,* 556 F.Supp. 434, D.C. (1982). However, we conclude that

In order to address these issues, we must review the somewhat unique statutory situation at issue. This Court, in dealing with a similar issue, succinctly iterated the history of the statute of limitations for fraud actions:

The Pennsylvania legislature in 1976 enacted a new, all-inclusive limitation of actions statute. 42 P.C.S. § 5522–5527. This new statute, however, contained no express limitation on actions for fraud and deceit. In 1982, the legislature amended the Judicial Code to provide a two-year limitation period specifically for fraud and deceit actions. *Id.* § 5524(7). This amendment applies only to causes of action accruing after its effective date in February, 1983. Act No. 326, 1982 Pa.Laws 1409, 1440.

*Gabriel v. O'Hara,* 368 Pa.Super. 383, 395, 534 A.2d 488, 495 (1987). According to 42 Pa.C.S.A. § 5527, a residuary provision, any actions or proceeding not subject to a particular limitation period found elsewhere in chapter 55 must be brought within six years.

The insurer argues, initially, that, because it seeks rescission, and not money damages, its action is not one "sounding in trespass," and thus, § 5524(7)'s two year limitations period does not apply. We do not agree.

Section 5524(7) applies to any *"action* or proceeding sounding in trespass, including deceit or fraud...." (emphasis added). The general definitions provision in Title 42 defines an "action" as "any action at law or in equity." 42 Pa.C.S.A. § 102 (emphasis added). Thus, read in conjunction, absent a specific definition of "action" applicable to § 5524(7), or a clear indication that a contrary definition of "action" was intended for § 5524(7), the two year limitations period applies to "any action [in law or equity], sounding in trespass, including fraud." 42 Pa.C.S.A. § 5524(7). This Court has held that "... *any* claim for fraud brought after February 18, 1983 is specifically governed by the language of section 5524(7)...." *See Amodeo, supra,* 407 Pa.Superior Ct. at 463, 595 A.2d at 1238. Thus, the two

the insurer's cause of action accrued after February, 1983, and therefore, we need not resolve this dispute.

year limitations period applies to the insurer's action to rescind the insurance contract based on fraud, if that action accrued after February 18, 1983.[8]

A cause of action accrues "at a time when the plaintiff could have first maintained the action to a successful conclusion." *Kapil v. Ass'n of Pennsylvania State College & University Faculties*, 504 Pa. 92, 99, 470 A.2d 482, 485 (1983) (citations omitted). In order to rescind an insurance policy for fraud, a plaintiff must prove:

(1) a false application statement;

(2) on a subject material to the risk to be insured against;

(3) the applicant's knowledge that the statement was made in bad faith or was untrue.

*See Allstate Ins. Co. v. Stinger*, 400 Pa. 533, 541, 163 A.2d 74, 76–77 (1960); *A.G. Alleback v. Hurley*, 373 Pa.Super. 41, 52, 540 A.2d 289, 294 (1988). Here, the trial court found that the insurer established all of the requisite elements to rescind the insurance contract. The trial judge also found that the insurer was not charged with notice of the insured's misrepresentation until 1983, when the insurer learned that there were outstanding asbestos-related claims against its insured. As a result, the trial judge held that the insurer's cause of action accrued in 1983.

The insurer argues that the trial court erred in determining that its cause of action accrued in 1983. Instead, the insurer asserts that because the insured's misrepresentations occurred in 1982, and because it (the insurer) received

**8.** National cites *Gabriel v. O'Hara, supra,* for the proposition that certain types of "hybrid" actions, those which sound in both trespass and assumpsit, are subject to the six year statute of limitations. While that case does state that the six year limitations period of 42 Pa.C.S.A. § 5527(6) applies to private causes of action brought under the UTPCPL, the *Gabriel* court noted the "*sui generis*" nature of the Unfair Trade Practices and Consumer Protection Law in its decision to apply a six year statute of limitations. *Gabriel, supra,* 368 Pa.Superior Ct. at 394, 534 A.2d at 494. The instant case does not involve the UTPCPL, and is therefore distinguishable.

evidence of the misrepresentations in 1982,[9] which *could have* lead it to discover the insured's misrepresentation (which it failed to discover due to lack of diligence), its cause of action arose upon receipt of this information. The crux of the insurer's argument is that the discovery rule, a rule developed to aid plaintiffs, ought to operate to prevent its claims from being time-barred. This argument misconstrues the purpose underlying the operation of the discovery rule.

■ The discovery rule is an exception to the general rule that,

> a party asserting a cause of action is under a duty to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based and to institute suit within the prescribed statutory period. . . . Once the prescribed statutory period has expired, the party is barred from bringing suit unless it is established that an exception to the general rule applies and acts to toll the running of the statute.

*Pocono International Raceway v. Pocono Produce*, 503 Pa. 80, 84–85, 468 A.2d 468, 471 (1983) (citations omitted). The discovery rule operates to toll or delay the running of the statute of limitations to aid a plaintiff who, *"despite the exercise of due diligence"* was unable to know of an injury or its cause. *Id.*, 503 Pa. at 85, 468 A.2d at 471 (emphasis added). When applying the discovery rule, a court must first determine whether an injured party was diligent in discovering its cause of action. *Id.*

A discovery rule does not operate here to give the insurer the result it seeks: an earlier accrual date (before February 1983). First, the insurer argues that it would have discovered the insured's misrepresentation *if* it had exercised due diligence. Only a diligent party may benefit from the discovery rule. *See Pocono International Raceway, su-*

9. The insurer's agent, in July of 1982, received information from the insured's agent that the lawsuits filed against the insured involved ". . . some sort of lung condition."

*pra.* Second, the insurer wants a result-oriented discovery rule which would expedite the commencement of the limitations period in order to benefit a plaintiff whose cause of action, by virtue of an anomalous statutory situation, would be preserved if an *earlier* accrual date were applied. However, the discovery rule operates to *delay* (not accelerate) the commencement of a limitations period. *Id.,* 503 Pa. at 85, 468 A.2d at 471. Therefore, we affirm the trial court's determination that the insurer's cause of action accrued, and the statute of limitations began to run, on June 3, 1983.

Order Affirmed.

DEL SOLE, J., files a dissenting opinion.

DEL SOLE, Judge, dissenting.

Because Appellant/insurer's action accrued in 1982 prior to enactment of the of the two year limitation period adopted in 42 Pa.C.S.A. § 5524, I would hold that Appellant's action is governed by the six year limitation provisions of 42 Pa.C.S.A. § 5527 and is not time barred.

The Majority correctly recounts the three elements necessary to make a claim for rescission of an insurance policy based on fraud. Further, it appropriately accepts the trial court's conclusion that the insurer was able to establish all the requisite elements. The Majority errs, in my view, when it then applies the discovery rule to Appellant's cause of action.

It is clear from the facts that Appellant was harmed and that its cause of action accrued in 1982 when its insured made material misrepresentations in bad faith or which it knew to be untrue. Appellant's right to institute and maintain its suit against the insured arose at that time, and it had a duty to use all reasonable diligence to be properly informed of the facts and circumstances upon which it could seek recovery and to then institute suit within the applicable statutory period. Appellant succeeded in meeting this threshold when it filed the underlying action in 1987, within the six year statutory period from the time when it had a

right to institute suit. "The statute of limitations begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations." *Pocono International Raceway v. Pocono Produce*, 503 Pa. 80, 468 A.2d 468, 471 (1983).

The discovery rule operates as an an exception to the general rule "and arises from the inability of the injured, despite the exercise of due diligence to know of the injury or its cause." *Id.* The discovery rule, thus, acts as an aid to claimants, to enable the courts to apply its equitable principles where, despite the exercise of diligence, parties are unaware of their injury. Before applying this exception the court must be "presented with an assertion of applicability of the 'discovery rule'" and then seek to determine whether the parties have satisfied the requirements of due diligence in ascertaining their cause of action. *Id.*

The Majority acknowledges the above principles, and dismisses Appellant's argument by stating that "[o]nly a diligent party may benefit from the discovery rule." The Majority concludes that because Appellant admits that if it had exercised diligence in 1982, when the statements were made by its insured, it would have discovered the misrepresentation, then it was not diligent and should not benefit from the discovery rule. Appellant, however, does not seek the equitable exception of the discovery rule to extend the time in which it can commence its action; rather, it seeks to apply the general rule which requires an action to be brought within the statutory period from the time when the right to institute and maintain the suit arose. Because Appellant had that right in 1982 and did use diligence in instituting its suit within the statutorily required 6 year period, Appellant's claim should not be time barred. Appellant is not, as the Majority suggests, seeking to accelerate the commencement of the limitation period; it only seeks to apply the general rule without requesting an equitable exception for an extension. The Majority recognizes that the discovery rule was developed to aid Plaintiffs, yet it

turns this shield, which operates to protect plaintiffs' interests, into a sword to be used against a plaintiff who never sought its application.

Because I conclude that Appellant's cause of action arose in 1982 when its insured made knowing material misrepresentations when applying for coverage that resulted in the issuance of the insurance policy, I cannot join in the Majority's decision.