IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kenrich Athletic Club,           :
                 Appellant     :
                          :
          v.              :
                          : No. 955 C.D. 2013
19th & Sansom Corp.        : Submitted: February 14, 2014

BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
                HONORABLE ROBERT SIMPSON, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE McGINLEY              FILED: August 11, 2014

Kenrich Athletic Club (Kenrich) appeals the orders of the Court of Common Pleas of Philadelphia County (trial court) that denied Kenrich's motions for post-trial relief.

## I. Background.

In 1995, 19th and Sansom Corporation (Sansom) and Supreme Catering Services, Inc. (Supreme) entered into a lease for real property owned by Sansom located at 121 South 19th Street (Property) in the City of Philadelphia. Paragraph No. 12(f) of the Lease provided:

> It is understood and agreed that the Lessor hereof does not warrant or undertake that the Lessee shall be able to obtain a permit under any Zoning Ordinance or Regulation for such use as Lessee intends to make of the said premises, and nothing in this lease contained shall obligate the Lessor to assist Lessee in obtaining said permits; the Lessee further agrees that in the event a permit cannot be obtained by Lessee under any Zoning Ordinance or Regulation, this lease shall not terminate without Lessor's consent, and the Lessee shall use the

premises only in a manner permitted under such Zoning Ordinance or Regulation.

Lease Agreement, April 1, 1995, (Lease), Paragraph No. 4 at 5; Reproduced Record (R.R.) at 85a.

Paragraph No. 36 of the Lease further provided that the Lessee was responsible for any necessary governmental/municipal approvals, zoning permits, etc. and provided that the Lessee had sixty days from the date of signing to obtain such approvals. If the Lessee did not obtain the approvals within sixty days, the Lessee had the option to terminate the lease.

On May 1, 2003, Anthony Fusco (Fusco) and Derry Ellis (Ellis) entered into a sublease with Supreme with the consent of Sansom. Supreme remained responsible under the terms of the 1995 lease, and Fusco and Ellis were also bound by the terms of the 1995 lease. Under the sublease Fusco and Ellis had the right to assign the sublease to a corporate nominee or similar entity. Effective April 1, 2004, Fusco and Ellis assigned the sublease to Kenrich with Francis Twardy (Twardy) as president and steward.

Kenrich operated the Property as a private after hours club. Kenrich held a private club liquor license for the Property, issued by the Pennsylvania Liquor Control Board (LCB) which meant that it was supposed to be open only for members and could operate until 3:30 a.m.

Although Kenrich was allegedly advised that a certificate of occupancy existed for the operation of a private club, Kenrich was never provided

2

with such a certificate. Further, the City of Philadelphia Department of Licenses and Inspections (L&I) did not have a certificate of occupancy, lawful occupancy permit, or a special assembly occupancy license on file for the operation of a private club on the Property.

On April 6, 2010, Shirley A. Boesenhofer (Boesenhofer), office manager for Leroy Kean Corporation, the entity which managed the Property for Sansom[1], informed Supreme by letter that it owed Sansom the sum of $13,853.69. The amount consisted of late fees of $654.00, a filing fee of $650.00, real estate tax of $10,577.92, insurance of $1,034.00, and the Center City District Tax of $937.77. Letter from Shirley A. Boesenhofer, April 6, 2010, at 1; Supplemental Reproduced Record (S.R.R.) at 29b. Supreme also failed to pay the rent that was due on May 1, 2010, which increased the amount due and owing to more than $22,000.00.

On May 4, 2010, L&I ordered that all operations on the Property cease because Kenrich lacked a special assembly occupancy license and was a public nuisance.

L&I determined that the third floor of the Property was dangerous and not to be used. On or about May 7, 2010, Twardy approached Kean and asked Kean to sign an Affidavit of Restricted Use which would indicate that the third

---

[1] Sansom owned the Property. Leroy Kean (Kean) explained the ownership of Sansom: "Well, my wife owned the properties, so when she passed away, it was placed in a trust, and during my lifetime I'm the beneficiary of the trust." Notes of Testimony, May 7, 2012, (N.T.) at 102.

floor of the Property would not be used. Twardy had previously submitted an Affidavit of Restricted Use to L&I but was informed that the property owner must sign. Twardy needed the Affidavit of Restricted Use in order to obtain a lawful occupancy placard, a certificate of occupancy and/or a special assembly occupancy license. Kean refused to sign. He also refused to sign after Muhammad Baribkin (Baribkin) of Supreme asked him to do so.

On or about May 18, 2010, counsel for Sansom informed Supreme by letter that the Lease was in default and ordered Supreme to surrender and vacate the premises immediately. Kenrich and Twardy were listed as receiving a copy of the letter. On or about May 28, 2010, counsel for Supreme notified Kenrich and Twardy that the lease and sublease were terminated due to Kenrich's defaults and Kenrich was ordered to vacate the premises by June 1, 2010. Letter from Steven Berk, May 28, 2010, at 1-2; R.R. at 120a-121a.

## A. Ejectment Actions.

On May 27, 2010, Sansom commenced an action for confession of judgment in ejectment for possession of the Property against Supreme. On June 24, 2010, Kenrich intervened and filed a petition to open the confession of judgment. On October 7, 2010, the trial court granted Kenrich's petition to open the confession of judgment and left the ejectment and possession issues to be decided by way of equitable relief.

4

On July 16, 2010, Supreme commenced an action in the trial court against Kenrich, Fusco, and Ellis[2] for confession of judgment, possession of the Property and money damages. In a counterclaim Kenrich alleged that Supreme owed Kenrich money for failure to pay repairs and expenses.

## B. Kenrich's Suit for Damages.

On May 4, 2011, Kenrich commenced an action in the trial court against Sansom. Kenrich alleged that L&I advised Kenrich that it did not have a Lawful Occupancy or Certificate of Occupancy on file for the Property and both were needed to operate its business. L&I further advised that due to zoning issues regarding the third floor of the Property, it would not issue the permits without an Affidavit of Restricted Use which the owner needed to sign. To sign, Kean would have to state that the third floor would not be used. Because Kean refused to sign the Affidavit of Restricted Use, Kenrich was unable to operate its business.

In Count I of the Complaint, Kenrich alleged that Sansom's failure to provide notice of and an opportunity to cure any default of the Lease and Sublease and its premature confession of judgment constituted a breach of the Lease and Sublease and caused Kenrich to sustain substantial damages. In Count II of the Complaint, Kenrich alleged that Sansom's failure to execute the Affidavit of Restricted Use was the sole reason that Kenrich could not obtain a Certificate of Occupancy and Lawful Occupancy which prevented Kenrich from lawfully operating its business and resulted in unjust enrichment for Sansom. In Count III

---

[2] Fusco and Ellis were dismissed from the case. The remaining parties have not challenged their dismissals.

of the Complaint, Kenrich alleged that Sansom breached an implied duty of good faith and fair dealing with Kenrich because it failed to execute the Affidavit of Restricted Use, when it failed to provide notice of any default, when it failed to provide Kenrich with an opportunity to cure any default, and when it confessed judgment for ejectment and possession without first providing Kenrich with notice and an opportunity to cure. In Count IV of the Complaint, Kenrich alleged tortious interference with contractual relations based on Sansom's failure to execute the Affidavit of Restricted Use. In each count Kenrich alleged damages in excess of $2,000,000.

On June 1, 2011, the trial court consolidated the two ejectment actions and Kenrich's claims for damages.

Sansom answered Kenrich's Complaint and denied the material allegations. In a counterclaim Sansom alleged that Kenrich had been cited for numerous violations of its liquor license including citations for "being a noisy bar, serving visibly intoxicated persons, selling to non-members, signing up members at the door, allowing minors to frequent, selling after hours, failing to vacate, selling off premises, selling unlimited drinks for a set price and failing to maintain truthful documents." Answer to Plaintiff's Complaint, New Matter and Counterclaim, August 23, 2011, Paragraph No. 182 at 37. In addition Sansom alleged that it received numerous complaints from members of the community regarding the activities taking place at the Property. Also, there were numerous uncorrected City of Philadelphia code violations relating to Kenrich's use of the

6

Property in early 2010. Sansom further alleged that it had sustained substantial damages in excess of $50,000.[3]

On March 9, 2012, Sansom moved to bifurcate the trial into two phases: first, the nonjury ejectment claims and second, Kenrich's action for damages for which a jury trial was demanded. On April 13, 2012, the trial court granted the motion.

## II. Ejectment Trial.

On May 7, 2012, trial commenced on the ejectment actions. Boesenhofer explained that under the lease Supreme was responsible for real estate taxes, Center City District taxes, insurance, use and occupancy tax, water, electric, and gas. N.T. at 60; S.R.R. at 6b. Boesenhofer testified that Sansom had not received any payment from either Supreme or Kenrich since April 5, 2010. N.T. at 69; S.R.R. at 8b.

Kean testified that he did not agree to fill out the Affidavit of Restricted Use when it was presented to him by Twardy and Christopher Twardy (C. Twardy) of Kenrich. N.T. at 119-120; S.R.R. at 11b-12b. Kean identified a blank Affidavit of Restricted Use which was identical to the one Twardy asked him to sign. On direct examination Kean reviewed the form:

> Q: Do you believe this, P-16, to be the form that the Twardys asked you to sign after the club was closed?
>
> A: Yes.

---

[3] Sansom also filed a joinder complaint to add Supreme.

7

Q: I want to walk through it with you.
The second paragraph, 'In making repairs and alterations to this existing building,' and then there's a blank. Was it your understanding that what Mr. Twardy wanted you to do was to put your name there as owner?

A: It says, blank, will not hereafter occupy the, blank, floors unless, blank, shall first make the building – yes, that would be the owner.

Q: Okay. So the owner will not hereafter occupy. And then in that next blank, did you understand that to be the third and fourth floors or just the third floor?

A: Well, it would be everything above the second floor.

Q: Okay. Unless – and then in the next blank again: 'Owner shall first make the building comply in all respects with the requirements of the building laws governing building and occupancy.'
And then the next: Owner agrees to construct of approved material a barrier to human occupancy in existing' –

A. It would be the third and fourth floors. It is a four story building.

N.T. at 118-119; S.R.R. at 11b.

Kean explained that he did not sign the Affidavit of Restricted Use because he could not guarantee that Kenrich would not use the third or fourth floor of the Property and "the velvet ropes in themselves, as far as the barrier to entry into those upper areas, is illegal so this would be a violation in and of itself. As you can see, they can be easily moved, too." N.T. at 122; S.R.R. at 12b. Kean believed that he would be liable if anyone was injured on an upper floor. N.T. at 122-123; S.R.R. at 12b.

8

Sansom submitted a record of L&I and Pennsylvania Liquor Control Board (LCB) actions involving Kenrich. Kenrich's counsel moved for a nonsuit on the basis that there had not been a proper notice of default. The trial court denied the motion.[4]

Twardy explained that Kenrich was a non-stock corporation. N.T. 5/9/12 at 99-100. Twardy testified that the owners of Supreme told him there was a lawful occupancy permit and a certificate of occupancy. N.T. 5/9/12 at 108. Twardy did extensive soundproofing of the Property. N.T. 5/9/12 at 117-118. Twardy believed that a letter from Sansom regarding default did not provide an opportunity to cure. N.T. 5/9/12 at 124. Twardy estimated that he had invested $150,000 to $200,000 in the Property in three years and had paid approximately $350,000 in rent. N.T. 5/9/12 at 162-163. On cross-examination, Twardy identified judgments against Kenrich for failure to pay the liquor tax and for notices of violations from the Pennsylvania State Police Bureau of Liquor Enforcement. He also identified violation notices from L&I and adjudications from the LCB.

At the conclusion of the trial, the trial court granted Sansom's claim for ejectment and possession against Supreme, granted Supreme's claim for

---

[4] Baribkin testified regarding the sublease and testified that nothing had been paid to Supreme from Kenrich after February 2010. Notes of Testimony, May 9, 2012, (N.T. 5/9/12) at 41.

ejectment and possession against Kenrich, and denied all counterclaims.  Kenrich filed a post-trial motion which the trial court denied on May 29, 2012.[5]

### III.  Trial on Damages.

On April 22, 2013, the damages trial began.  Twardy testified that he did not make a rental payment in May 2010, because Kean was actively destroying his business and did not allow Kenrich to open.  Notes of Testimony, April 22, 2013, (N.T. 4/22/13) at 75.  Twardy testified that when he managed Kenrich, he soundproofed the Property; fixed the air conditioning unit several times; and put in a new fire safety system at a cost of $10,000.  N.T. 4/22/13 at 147-148.

C. Twardy, secretary of Kenrich and president of Hard Investment Finances, LLC, which owned the furniture, fixtures, and equipment at the Property while Kenrich operated there, testified that after Kenrich was shut down he observed that ice machines, beer coolers, sinks, sound equipment, "stuff from the office, safes, liquor, beer, construction tools" were missing after he returned to retrieve Kenrich's belongings.  N.T. 4/23/13 at 99.

The trial court did not permit Morris Gocial (Gocial) to testify regarding lost profits due to Kean's refusal to sign the Affidavit of Restricted Use.

---

[5]     Kenrich appealed to this Court.  On or about November 15, 2012, jurisdiction was transferred from this Court to the Superior Court.  In August 2013, this appeal was quashed due to the lack of a final appealable order.  Once the trial on damages was over, there was a final appealable order from which Kenrich could appeal.

10

Joseph T. Flanagan (Flanagan), supervisor of the Permit Intake Unit in the Residential Review Unit for L&I, testified concerning the application process for various permits. He testified that he had never spoken to anyone from Sansom. Notes of Testimony, April 24, 2013, (N.T. 4/24/13) at 25.

George Michael Altmeier (Altmeier), engineering supervisor for the engineering unit of L&I, testified that the owner of a property must sign an affidavit of restricted use. N.T. 4/24/13 at 35. Altmeier stopped reviewing an application to expand the restaurant/bar/catering use of the Property to the third floor after L&I received a letter from Kean, dated May 20, 2010, that opposed the expansion. N.T. 4/24/13 at 37.

At the conclusion of Kenrich's case, Sansom moved for a compulsory nonsuit pursuant to Pa.R.C.P. No. 230.1 on the basis that Kenrich failed to prove liability on any of the four counts of Kenrich's Complaint. N.T. 4/24/13 at 63. The trial court granted the motion and entered nonsuit on April 24, 2013. Kenrich moved for post-trial relief which the trial court denied on June 3, 2013.[6]

---

[6] Kenrich appealed to this Court. Although this case was not properly within this Court's jurisdiction, Sansom did not file an objection to jurisdiction. Pursuant to 42 Pa.C.S. §704, "[t]he failure of an appellee to file an objection to the jurisdiction of an appellate court within such time as may be specified by general rule, shall, unless the appellate court otherwise orders, operate to perfect the appellate jurisdiction of such appellate court. . . ."

11

Previously, on April 23, 2013, Kenrich filed a motion for conversion and alleged that Sansom denied Kenrich its rights to its personal property[7] contained inside the Property. Kenrich sought judgment in its favor for $80,000.00. On June 3, 2013, the trial court denied the motion.

## IV. Issues before this Court.

Kenrich contends that the trial court erred and abused its discretion when it: bifurcated the actions; refused to hear testimony and incorrectly weighed the testimony presented; granted Sansom's motion for nonsuit; and denied Kenrich's motion for conversion.[8]

## A. Bifurcation.[9]

Kenrich contends that the trial court erred and abused its discretion when it ordered the bifurcation of the ejectment actions and the damages suit.

---

[7] This personal property allegedly included tools, air conditioners, sinks, beer coolers, tables, glasses, cash registers, furniture, televisions, alcohol, ice machines, sound equipment, and other items.

[8] In reviewing an appeal from the denial of post-trial motions, this Court's review is limited to a determination of whether the trial court abused its discretion or committed an error of law. Milan v. Department of Transportation, 620 A.2d 721 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 633 A.2d 154 (Pa. 1993).

[9] Kenrich also raises the issue of whether this Court has jurisdiction of his appeal. Kenrich filed the appeal here, and Sansom did not object to this Court's jurisdiction. This Court will maintain jurisdiction. See note 6, *supra*.

Kenrich also contends that the trial court erred and abused its discretion because it was "relegislating" Pennsylvania law when it favored the lease language over Pennsylvania law. Kenrich cites a few examples of where the trial court allegedly ignored "valid" Pennsylvania law. Although Kenrich lists this as a separate issue, these examples are best discussed under other headings. For instance, Kenrich argues that Sansom was required to provide notices to Kenrich under the lease provisions and also raises this matter in its discussion of Sansom's alleged breach of contract.

Kenrich argues that the cases were intricately related and that bifurcation hindered judicial economy and obstructed the jury's deliberative process. Kenrich asserts that an appellate court should have ruled on the motion to bifurcate.

> The court's decision to bifurcate a trial will not be disturbed absent an abuse of discretion. . . . Before ordering the separate adjudication of issues, the court should carefully consider the issues raised and the evidence to be presented to determine whether the issues, here liability and damages, are interwoven. . . . Bifurcation is discouraged in those cases in which evidence relevant to both issues would be excluded in one portion of the trial and would result in prejudice to the objecting party. . . . However, bifurcation is strongly encouraged and represents a reasonable exercise of discretion where the separation of issues facilitates the orderly presentation of evidence and judicial economy . . . or avoids prejudice. . . .

Coleman v. Philadelphia Newspapers, Inc., 570 A.2d 552, 555 (Pa. Super. 1990).

The trial court explained its rationale for the bifurcation:

> In the instant matter, this case consisted of three (3) separate actions; two (2) of which were listed for non-jury trials and one (1) jury matter where monetary damages were sought as relief. Based on that fact, this Court determined that bifurcation of these actions outweighed trying them with two non-jury equity cases. As such, trying the jury and non-jury trials together would have opened the door for jury confusion. The jury would have been faced with the cumbersome task of deciphering which evidence was pertinent to the issue which they were to decide. Further, the risk of the jury being exposed to evidence that may have been admissible in the non-jury actions but not the jury action was extremely high. Therefore, this Court's decision to bifurcate these actions was sound judicial discretion

thereby rendering Appellant's [Kenrich] claim without merit.

Trial Court Opinion, October 19, 2012, (Opinion) at 6-7; S.R.R. at 54b-55b.

This Court finds no abuse of discretion concerning the decision to bifurcate.

## B. Trial Court's Handling of Twardy's Testimony.

Next, Kenrich contends that the trial court erred and abused its discretion when it refused to hear testimony and incorrectly weighed testimony. First, Kenrich asserts that the trial court erred when it restricted the testimony of Twardy concerning the Philadelphia Building Code.

The decision whether to admit evidence is left to the discretion of the trial court and will only be reversed if the trial court clearly abused its discretion. Commonwealth v. Kennedy, 959 A.2d 916 (Pa. 2008).

The trial court reasoned:

In this instance, Appellant's [Kenrich] counsel attempted to introduce the aforementioned evidence [evidence of the Philadelphia Building Code and the Administrative Code] by way of the testimony of Leroy Kean and Fran Twardy. As this Court stated during trial, what the codes said were not relevant to the case. Further, this Court made clear that Mr. Twardy was a lay fact witness; he was not in a position to make any determinations regarding law. . . . This Court instructed Appellant's [Kenrich] counsel if he wished to introduce evidence of the city of Philadelphia's Building Code and Administrative Code he could and should have called a city of Philadelphia representative regarding the codes. . .

14

. As such, this Court's decision to exclude the testimony was not an 'overriding misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of the record' as to amount to an abuse of discretion. . . . Therefore, this claim is without merit. (Citation and footnote omitted).

Opinion at 7-8; S.R.R. at 55b-56b.

This Court finds no abuse of discretion.

## C.  Boesenhofer Testimony.[10]

Kenrich also contends that Boesenhofer presented false testimony concerning notices provided to Kenrich and amounts due and owing to Sansom. According to Kenrich, Boesenhofer had the incentive to provide false testimony because she worked for Sansom for over thirty years.  Kenrich also argues there were no witnesses produced who corroborated Boesenhofer's testimony in violation of the "two witness rule."[11]

The trial court was the finder of fact.  It is well-established law that "the finder of fact, the trial court has exclusive authority to weigh the evidence, make credibility determinations and draw reasonable inferences from the evidence presented."  Barylak v. Montgomery County Tax Claim Bureau, 74 A.3d 414 (Pa.

---

[10]  To avoid confusion, this Court has foregone the sequence of Kenrich's arguments.

[11]  Kenrich asserts that there is a rule which requires a second witness to corroborate the testimony of a first witness before the first witness may be considered credible.  Curiously, the first case it cites in support of this purported rule, Eldridge v. Melcher, 313 A.2d 750, 753 (Pa. Super. 1973), states "it should be noted that the evidence may be found sufficient, though it be meager or uncorroborated."  Eldridge actually stands for the proposition that evidence need not be corroborated.

15

Cmwlth. 2013). This Court may not disturb the trial court's credibility determinations or the weight the trial court gave to a particular witness's testimony. Further, this Court is unaware of any requirement that a witness's testimony be corroborated by another witness.

### D. Testimony from Flanagan and Altmeier.

Kenrich next contends that the trial court erred when it foreclosed testimony from Flanagan and Altmeier. Kenrich argues that both witnesses intended to produce additional evidence but the trial court prevented them from doing so. Kenrich neither points to any specific instance in the record where their testimony was precluded nor does Kenrich specify what evidence they were precluded from introducing other than that both "attempted to expound on the Codes." Appellant's Brief at 25. Without a more detailed explanation of the trial court's alleged error, this Court is unable to review this contention.[12]

### E. Damages Suit.

Kenrich next contends that the trial court erred and abused its discretion when it granted Sansom's motion for non-suit regarding Kenrich's claims for breach of contract, unjust enrichment, breach of the duty of good faith and fair dealing, and tortious interference.

### 1. Breach of Contract.

---

[12] Kenrich also contends that the trial court improperly weighed the testimony of Baribkin which contradicted his earlier admissions and that of Kean. Once again, Kenrich is asking this Court to reweigh the evidence which this Court will not do.

16

With respect to the breach of contract claim, Kenrich asserts that it has a contract with Sansom based on the lease and the sublease. Kenrich asserts that it never received appropriate and reasonable notice of any default under the lease, sublease, or addendum to the sublease. Kenrich further asserts that it was never given an opportunity to cure any possible default. Kenrich claims that the lack of notice of default and the lack of an opportunity to cure the default constituted a breach of contract.

The trial court granted Sansom's motion for non-suit on this claim and the others raised by Kenrich. The trial court reasoned:

> In its complaint, the Appellant [Kenrich] alleged that due to the lack of notice and opportunity to cure, Sansom breached the . . . 1995 lease and the sublease when it filed for ejection. The 1995 lease was between Sansom and Supreme. The 2007 sublease between the Appellant [Kenrich] and Supreme did not create a direct contract between Sansom and the Appellant [Kenrich]. Further, that sublease did not impose on Sansom any duty to do over and above that set forth in the original 1995 lease.
>
> Per 1995 lease, rent was due between the first and fifth day of each month. In a letter dated May 18, 2010, Sansom's counsel wrote to Supreme Catering informing them of the outstanding rent and related charges due for the month of May. Further, Sansom's counsel was not authorized to initiate suit for the outstanding monies until May 27, 2010, twenty-two (22) days after the rent payment was due and nine (9) days after the default letter was sent. Giving all reasonable inferences to the Appellant [Kenrich], this Court determined this to be adequate notice and opportunity to cure. Therefore, Sansom did not breach the 1995 lease or the sublease. Thus, non-suit on this claim was appropriate.

17

Trial Court Opinion, September 20, 2013, (Opinion 9/20/13)[13] at 10-11; S.R.R. at 73b-74b.

A non-suit may be entered where the facts and circumstances make it clear that the defendants are not liable based upon the cause of action pleaded. United National Insurance Company v. J.H. France Refractories Company, 612 A.2d 1371 (Pa. Cmwlth. 1992), *reversed on other grounds*, 668 A.2d 120 (Pa. 1995).

In B.C. & H. Corporation v. Acme Markets, Inc., 19 Pa. D. & C 3d 419, 446 (1980), the Court of Common Pleas of Somerset County cited the Summary of Pennsylvania Jurisprudence, Landlord and Tenant §163, for the proposition that "[t]here is neither privity of estate nor privity of contract between a sublessee and the original lessor by virtue of the mere fact of subletting."

Kenrich cites no case law to establish that it had a contract between itself and Sansom by virtue of the fact that it sublet the Property from Supreme. Further, to the extent that Kenrich argues that it did not receive adequate notice from Supreme, any cause of action would lie against Supreme and not Sansom. In order to make a valid claim for breach of contract, a party must establish that a contract existed, a breach of a duty imposed by the contract, and damages that resulted from that breach. The General State Authority v. Coleman Cable & Wire Company, 365 A.2d 1347, 1349 (Pa. Cmwlth. 1976). Kenrich did not establish

---

[13] The trial court issued a separate opinion for each trial.

18

that a contract existed between Sansom and Kenrich. Consequently, the claim for breach of contract fails.

## 2.  Unjust Enrichment.

With respect to its claim for unjust enrichment, Kenrich asserts that Kenrich was forced to close because it lacked a certificate of occupancy and a lawful occupancy permit.  Kenrich asserts that it did not receive these permits because Kean refused to sign the Affidavit of Restricted Use.  Kenrich asserts that the Property should not have been occupied during the seven years that Kenrich was a sublessee.  As a result, Sansom benefitted and was unjustly enriched by seven years of rental payments.  It appears that Kenrich also argues that it made improvements to the Property to satisfy various codes of the City of Philadelphia regarding fire safety and life safety facilities and equipment.

In order to prove a claim for unjust enrichment, Kenrich had to establish that it conferred a benefit on Sansom, Sansom appreciated such benefits and accepted them under such circumstances that it would be inequitable for Sansom to retain the benefit without payment of value.  Northeast Fence & Iron Works, Inc. v. Murphy Quigley Company, 933 A.2d 664 (Pa. Super. 2007).

The trial court determined:

Here, even after giving the Appellant [Kenrich] the benefit of all reasonable inferences, the record lacks evidence to support a conclusion that the improvements to the property at 121 South 19th Street, made by the Appellant [Kenrich] were conferred on Sansom and that Sansom accepted and appreciated the benefits.  The soundproofing that the Appellant [Kenrich] installed was

19

> for the sole use and benefit of the Appellant's [Kenrich] business. As such, Sansom was not unjustly enriched by the improvements. Therefore, non-suit was appropriate with regard to this claim.

Opinion, 9/20/13 at 11; S.R.R. at 74b.

First, under Paragraphs 12(f) and 36 of the Lease, Sansom had no duty to obtain permits from governmental entities on behalf of Kenrich. Second, as Kean's testimony concerning the Affidavit of Restricted Use illustrated, the signing of the affidavit was not a mere formality. The owner had to agree to not occupy the third and fourth floors of the Property and to construct a barrier to human occupancy for those floors. Kean testified that he would not sign because there was no barrier other than a rope, and he could not guaranty that a barrier would be erected. Third, there is no merit in Kenrich's claim that it was entitled to all the rent it paid to Sansom over the time of its tenancy. It operated a business there during that time. Kenrich paid rent in return for the use of the Property. Fourth, improvements such as soundproofing and any changes to comply with fire or other codes were of benefit to Kenrich because it enabled it to operate its club. This Court agrees that Kenrich failed to establish the elements of unjust enrichment.

### 3.  Breach of Duty of Good Faith and Fair Dealing.

Next, Kenrich contends that Sansom breached its duty of good faith and fair dealing under the lease and sublease. The basis of Kenrich's claim is that Kean sent correspondence to former Deputy Commissioner of L&I, Dominic Verdi, and as a result a placard for lawful occupancy was never issued. Also, as another result of this correspondence, Kenrich alleged that L&I set numerous

20

requirements for fire safety issues for the third floor of the Property. Then, Kean refused to sign the Affidavit of Restricted Use for the third floor. Kenrich asserts that Kean's failure to sign and his ongoing interference breached the duty of good faith and fair dealing under the lease.

The trial court determined that Sansom had no responsibility to obtain any permits or license on behalf of Kenrich.

This Court must agree that this claim has no merit. Kean had no obligation under the lease to refrain from contacting L&I about problems with the Property. This Court has already determined that Kean was not required to sign the Affidavit of Restricted Use.

### 4. Tortious Interference.

Kenrich also contends that the trial court erred when it found that Kenrich failed to establish the elements of tortious interference. In Count IV of its Complaint, Kenrich asserted that Sansom/Kean's failure to execute and file the Affidavit of Restricted Use constituted tortious interference with Kenrich's contractual relationship under the sublease with Supreme.

The elements of tortious interference with a contractual relationship are 1) the existence of a contractual relationship between the complainant and a third party, 2) the intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship, (3) the absence of privilege or justification on the part of the defendant, and 4) the occasioning of actual damage

21

as a result of the defendant's conduct. <u>Empire Trucking Company, Inc. v. Reading Anthracite Coal Company</u>, 71 A.2d 923 (Pa. Super. 2013).

Kenrich devotes much of its argument to letters that Kean sent to various governmental authorities. However, the basis for the count of tortious interference was Kean's refusal to sign the Affidavit of Restricted Use. The trial court already determined, and this Court agrees, that Kean was not required to sign the Affidavit of Restricted Use in any capacity as landlord or representative of the landlord or as beneficiary of the trust that owned Sansom. As a result, this claim for tortious inference is without merit.

## F.  Testimony of Gocial.

Kenrich also asserts that the trial court abused its discretion when it did not permit Gocial to testify regarding damages. Kenrich asserts that Gocial would have provided expert testimony that Kenrich suffered damages in excess of $2,500,000.

The trial court did not permit Gocial to testify because his expert report indicated that he would quantify damages suffered due to Kean's refusal to sign the Affidavit of Restricted Use. Because the trial court determined that Kean had no obligation to sign the affidavit, the trial court determined that there was no basis to support the proposed testimony. As this Court has determined that the trial court did not err when it rendered its decision regarding the Affidavit of Restricted Use, this Court finds no error of law or abuse of discretion regarding Gocial's testimony.

## G.  Motion for Conversion.

Finally, Kenrich contends that the trial court erred and abused its discretion when it denied Kenrich's motion for conversion.  Kenrich alleged that Sansom denied Kenrich access to the Property and Kenrich was unable to obtain its belongings prior to when the sheriff took control of the Property.  When Kenrich gained access to the Property two months after the sheriff changed the locks, Kenrich's belongings were allegedly gone.  Kenrich asserted that Sansom misappropriated these belongings.

The trial court determined that Kenrich waived this claim because it was not raised in its Complaint.

Kenrich filed this motion on April 23, 2013, shortly before the trial court granted the motion for non-suit.  Kenrich did not include a claim for conversion in its original Complaint and never sought leave to amend the Complaint.  Such a claim raised for the first time by motion during trial is waived. See Consumer Party of Pennsylvania v. Commonwealth, 507 A.2d 323 (Pa. 1986).

Accordingly, this Court affirms.

_____
BERNARD L. McGINLEY, Judge

23

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kenrich Athletic Club,                        :
                  Appellant      :
                                 :
                                 :
          v.                      :
                                 : No. 955 C.D. 2013
19th & Sansom Corp.                        :

# O R D E R

AND NOW, this 11ᵗʰ day of August, 2014, the orders of the Court of Common Pleas of Philadelphia County in the above-captioned matter is affirmed.

_____
BERNARD L. McGINLEY, Judge